# Richmond

## LANDMARK COMMUNICATIONS, INC. v. COMMONWEALTH OF VIRGINIA.

March 4, 1977.

Record No. 760596.

Present, All the Justices.

*Conrad M. Shumadine (David Y. Faggert; Glenn W. Hampton, Kaufman, Oberndorfer and Spainhour,* on brief), for plaintiff in error.

*James E. Kulp, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The principal question in this case involves a confrontation between the First Amendment guaranty of freedom of the press and a Virginia statute which imposes criminal sanctions for breach of the confidentiality of proceedings before the Judicial Inquiry and Review Commission. A preliminary question is whether the appellant-newspaper is subject to the proscription of the statute.

Creation of the Judicial Inquiry and Review Commission was mandated by Article VI, Section 10 of the 1971 Constitution of Virginia for the purpose of investigating charges concerning disabled and unfit judges. The constitutional provision specifies that "[p]roceedings before the Commission shall be confidential."

The Commission was actually created by the General Assembly in 1971, at its session held to implement the new constitution. (1971 Va. Acts Spec. Sess. ch. 154; Va. Code §§ 2.1-37.1 *et seq.*) In the act creating the Commission, its powers and duties are outlined with detail. By the terms of Va. Code § 2.1-37.4, the Commission is empowered to investigate charges "which would be the basis for retirement, censure, or removal of a judge under § 10 of Article VI of the Constitution." If the Commission finds the charges well-founded and sufficient to constitute the basis for retirement, censure, or removal of a judge, it shall file a formal complaint with this court.[1]

Virginia Code § 2.1-37.13 [2] provides in pertinent part that "[a]ll papers filed with and proceedings before the Commission . . . including the identification of the subject judge . . . shall be confidential and shall not be divulged by any person to anyone except the Commission, except that the record of any proceeding filed with the Supreme Court shall lose its confidential character." The Code section provides further that "[a]ny person who shall divulge information in violation . . . of this section shall be guilty of a misdemeanor."

---

[1] Under Article VI, Section 10 of the Constitution, if this court finds the judge disabled to perform his duties, it shall retire him; if it finds he has engaged in misconduct while in office, it shall censure or remove him.

[2] "§ 2.1-37.13. **Confidentiality of papers and proceedings.** —
All papers filed with and proceedings before the Commission, and under the two preceding sections (§§ 2.1-37.11, 2.1-37.12), including the identification of the subject judge as well as all testimony and other evidence and any transcript thereof made by a reporter, shall be confidential and shall not be divulged by any person to anyone except the Commission, except that the record of any proceeding filed with the Supreme Court

The appellant, Landmark Communications, Inc., publishes *The Virginian-Pilot*, a newspaper of general circulation in the Tidewater area of Virginia. On October 4, 1975, the newspaper published an article stating that the Commission had conducted a "formal hearing concerning possible disciplinary action against" a judge, identified by name, of a court not of record in the City of Norfolk. The article recited further that the hearing "apparently stemmed from charges of incompetence against the . . . judge."

On November 5, 1975, Landmark was indicted for unlawfully divulging the identity of a judge who was "the subject of an investigation and hearing by the Judicial Inquiry and Review Commission." Upon trial of the indictment by the court without a jury, it was stipulated that Landmark had published the article in question; that the Commission had investigated charges and conducted hearings concerning the judge named in the article; and that, at the time of the publication, the Commission had not filed a complaint with this court respecting the judge.[3] Landmark was convicted of the charge laid in the indictment, and it was fined the sum of $500.00.

On appeal, Landmark contends that it is unclear from a reading of Va. Code § 2.1-37.13 whether the statute's proscription against divulging information concerning a Commission proceeding applies not only to the participants in such a proceeding but also to a newspaper which publishes information obtained from one of the participants. Because the statute is penal in nature, Landmark argues, it must be strictly construed, and any doubt or ambiguity concerning its application must be resolved against the Commonwealth and in favor of one accused of its violation.

---

shall lose its confidential character. However, if the Commission shall find cause to believe that any witness under oath has willfully and intentionally testified falsely, the Commission may direct the chairman or one of its members to report such finding and the details leading thereto including any transcript thereof to the Commonwealth's attorney of the city or county where such act occurred for such disposition as to a charge of perjury as the Commonwealth may be advised. In any subsequent prosecution for perjury based thereon, the proceedings before the Commission relevant thereto shall lose their confidential character.

All records of proceedings before the Commission which are not filed with the Supreme Court in connection with a formal complaint filed with that tribunal, shall be kept in the confidential files of the Commission.

Any person who shall divulge information in violation of the provisions of this section shall be guilty of a misdemeanor."

[3] As of the date of this opinion, no complaint had been filed with this court concerning the judge in question.

When the doubt or ambiguity in § 2.1-37.13 is so resolved, Landmark asserts, the statute should be construed to mean that a violation may occur only upon "the *first act of disclosure* . . . by an individual who had *actually participated* in some manner in the proceedings of [the] Commission." Under this construction and the circumstances of this case, Landmark concludes, the information concerning the judge in question "lost its confidentiality" and "became public upon its first disclosure" by a participant in the proceedings, and all Landmark did was to publish information "which was *voluntarily and freely* given to it." [4]

While we agree with Landmark that the statute must be construed strictly, we disagree with the remainder of its argument. We hold that Va. Code § 2.1-37.13 does not suffer the doubt or ambiguity asserted by Landmark.

In unmistakable terms, the statute states that all information concerning a proceeding before the Commission, including the identity of the judge who is the subject of the inquiry, shall be confidential and that this confidentiality shall continue until a formal complaint against the judge is filed with this court. So far as is pertinent here, only upon the filing of such a complaint is the record of a proceeding before the Commission placed in the public domain; only then does information concerning a proceeding before the Commission lose its confidential character.

Until a complaint is filed with this court, the proscription of the statute is applicable to punish any *person* who *divulges* any information concerning a proceeding before the Commission. Although Landmark is a corporation, by the force of Va. Code § 1-13.19,[5] it is a "person" within the meaning of Va. Code § 2.1-37.13. To "divulge" information means to disclose it or to make it known. *Black's Law Dictionary* 567 (4th ed. 1951). When Landmark published its article, it disclosed or made known to the public at large information which still was confidential.

The proscription of Va. Code § 2.1-37.13 is so clear that it would be unreasonable to construe the statute, as Landmark

---

[4] The record is silent, however, concerning the manner in which Landmark secured the information.

[5] "§ 1-13.19..**Person.** — The word 'person' may extend and be applied to bodies politic and corporate as well as individuals."

interprets it, to mean that only the participants in a Commission proceeding are subject to the prescribed sanctions or that only the first disclosure of confidential information is actionable. Clearly, Landmark's actions violated Va. Code § 2.1-37.13 and rendered it liable to imposition of the sanctions prescribed by the statute.

■ But, Landmark contends, to impose upon it the sanctions prescribed by Va. Code § 2.1-37.13 would unconstitutionally abridge its First Amendment guaranty of freedom of the press. This contention poses the serious question in the case and presents an issue not decided previously by this court or, so far as our research discloses, by any other appellate court in this country. The importance of the question is emphasized when it is considered that 34 jurisdictions in addition to Virginia, by constitutional provision, statute, or rule, require confidentiality of proceedings before bodies similar to our Judicial Inquiry and Review Commission.[6]

The First Amendment provides that "Congress shall make no law ... abridging the freedom ... of the press." Clearly, "the liberty of the press, and of speech, is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action." *Nebraska Press Ass'n* v. *Stuart*, 427 U.S. 556, 49 L.Ed.2d 683, 696 (1976). Freedom of the press, however, is not an absolute right, and the state may punish its abuse. *Near* v. *Minnesota*, 283 U.S. 697, 708 (1931). But when and under what circumstances a state may punish such an abuse is the difficult question, given the uncertainty created by the numerous decisions interpreting First Amendment rights.

From a review of the decisions of the United States Supreme Court involving restrictions upon First Amendment freedom of the press, it appears that the cases fall into three general categories: (1) denial of right of access to information; (2) prior restraint upon publication; and (3) subsequent punishment for publication. The present case involves no denial of access;

---

[6] Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Missouri, Montana, Nebraska, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Vermont, Wisconsin, and Wyoming. American Judicature Society, *Judicial Disability and Removal Commissions, Courts and Procedures* (1973).

Landmark concedes that it has no greater constitutional right of access than the general public to information concerning Commission proceedings. *See Saxbe* v. *Washington Post Co.*, 417 U.S. 843 (1974); *Pell* v. *Procunier*, 417 U.S. 817 (1974).

While conceding that it is "difficult to determine whether the instant case is a 'prior restraint' or 'subsequent punishment' case," Landmark contends that Va. Code § 2.1-37.13 does impose a prior restraint upon publication. Prior restraints, Landmark asserts, bear a heavy presumption against their constitutional validity, *New York Times Co.* v. *United States*, 403 U.S. 713, 714 (1971), and are permissible only (1) to protect the national security, (2) to prevent the publication of obscenity, and (3) to prohibit expression associated with situations which tend to incite acts of violence and the overthrow by force of government. *Near* v. *Minnesota*, 283 U.S. at 716. Because the publication in the present case does not fall within one of these exceptions, Landmark concludes, the prior restraint imposed by Va. Code § 2.1-37.13 is constitutionally impermissible.

We are of opinion, however, that Va. Code § 2.1-37.13 does not impose a prior restraint upon publication. Generally, prior restraints take the form of injunctions, requirements for licenses or permits, or censorship or previous review. Murphy, *The Prior Restraint Doctrine in the Supreme Court: A Reevaluation*, 51 Notre Dame Lawyer 898 (1975-1976). A prior restraint "has an immediate and irreversible sanction." *Nebraska Press Ass'n* v. *Stuart*, 427 U.S. at 559, 49 L.Ed.2d at 697-98. By contrast, Va. Code § 2.1-37.13 seeks to preserve the confidentiality of Commission proceedings by providing for the imposition of criminal sanctions *after* the statute has been violated. Thus, Virginia's proscription fits properly within the "subsequent punishment" category of cases.

The distinction between "prior restraint" and "subsequent punishment" is based upon "a theory deeply etched in our law," *viz.*, that "a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand." *Southeastern Promotions, Ltd.* v. *Conrad*, 420 U.S. 546, 559 (1975). Accordingly, the "presumption against prior restraints is heavier — and the degree of protection broader — than that against limits on expression imposed by criminal penalties." *Id.* at 558-59.

But even though this may be a "subsequent punishment" case and not subject to the heavy presumption against invalidity, Landmark argues, it does not follow that publication of the article in question is punishable by the Commonwealth. In "subsequent punishment" cases, Landmark asserts, the Supreme Court's decisions require that before a state may punish a violation of a restriction upon expression, it must satisfy the "clear and present danger" test. This test, opines Landmark, requires the state to prove by "actual facts" that the expression it seeks to prohibit would result in an evil which is substantial and imminent, posing a clear and present danger to a legitimate governmental interest.

The governmental interest involved here, Landmark says, is the orderly administration of justice; the burden was upon the Commonwealth, therefore, to prove by "actual facts" that publication of the article in question created a clear and present danger to the administration of justice in Virginia. Because the Commonwealth failed to produce "actual facts" showing a clear and present danger, Landmark concludes, the judgment imposing the sanction upon it is invalid under Supreme Court decisions interpreting the First Amendment.

Upon examination of the Supreme Court's decisions, we find that the "clear and present danger" standard was enunciated in *Schenck* v. *United States*, 249 U.S. 47 (1919). *Schenck* involved defendants charged with circulating printed matter alleged to constitute a violation of the Espionage Act of June 15, 1917. In defense, the First Amendment freedoms of speech and press were asserted. In the course of its opinion upholding the convictions, the Court stated:

> "It well may be that the prohibition of laws abridging the freedom of speech is not confined to previous restraints, although to prevent them may have been the main purpose .... We admit that in many places and in ordinary times the defendants in saying all that was said in the circular would have been within their constitutional rights. But the character of every act depends upon the circumstances in which it is done .... The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the

effect of force . . . . The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree." 249 U.S. at 51-52.

Subsequently, in a series of decisions, the Supreme Court applied the "clear and present danger" test to cases involving publications allegedly perilous to the orderly administration of justice. In *Bridges* v. *California*, 314 U.S. 252 (1941), *Pennekamp* v. *Florida*, 328 U.S. 331 (1946), *Craig* v. *Harney*, 331 U.S. 367 (1947), and *Wood* v. *Georgia*, 370 U.S. 375 (1962), the Court reversed convictions for contempt based upon out-of-court comment concerning pending cases. In each instance, the Court held that the particular expression involved was insufficient to pose a clear and present danger to the orderly administration of justice and, therefore, was protected by the First Amendment.

*Bridges* defined the scope of the "clear and present danger" standard. There, the Court stated:

"What finally emerges from the 'clear and present danger' cases is a working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished. Those cases do not purport to mark the furthermost constitutional boundaries of protected expression, nor do we here. They do no more than recognize a minimum compulsion of the Bill of Rights. For the First Amendment . . . does not speak equivocally. It prohibits any law 'abridging the freedom of speech, or of the press.' It must be taken as a command of the broadest scope that explicit language, read in the context of a liberty-loving society, will allow." 314 U.S. at 263.

It is upon *Bridges, Pennekamp, Craig,* and *Wood* that Landmark relies to support its assertion that before a state may punish expression, it must prove by "actual facts" the existence of a clear and present danger to the orderly administration of justice. *Bridges,* however, does not mention any requirement of evidence to establish a clear and present danger. But in *Craig,* the Court analyzed *Bridges* to have held that:

"[T]he compulsion of the First Amendment, made applicable to the States by the Fourteenth . . . forbade the punishment by contempt for comment on pending cases in absence of *a showing* that the utterances created a 'clear and present danger' to the administration of justice." 331 U.S. at 372 (emphasis added).

And, in *Pennekamp*, the Court stated:

"For circumstances to create a clear and present danger to judicial administration, *a solidity of the evidence* should be required . . . ." 328 U.S. at 347 (emphasis added).

Finally, in *Wood*, after criticizing the trial court for "simply [adopting] as conclusions of law the allegations made in the contempt citation," 370 U.S. at 387, the Court stated:

"Hence, in the absence of *some other showing* of a substantive evil actually designed to impede the course of justice in justification of the exercise of the contempt power to silence the petitioner, his utterances are entitled to be protected." 370 U.S. at 389 (emphasis added).

We agree with Landmark that there is no evidence in the record favorable to the Commonwealth's position beyond the stipulated facts showing Landmark had published the article in question, the Commission had investigated charges and conducted hearings concerning the judge named in the article, and, at the time of the publication, the Commission had not filed a complaint with this court respecting the judge. And we agree that Landmark cannot be punished for publishing the confidential information contained in the article unless the revelation created a clear and present danger to a legitimate state interest — the orderly administration of justice. But we do not agree with Landmark that, because the Commonwealth did not produce other evidence by way of "actual facts" to show a clear and present danger, *Bridges, Pennekamp, Craig,* and *Wood* require reversal of the judgment of the trial court.

In our opinion, the present case differs substantially from *Bridges, Pennekamp, Craig,* and *Wood.* Those decisions involved the *common law power* of a court to punish allegedly contemptuous out-of-court statements concerning pending cases. Necessarily, therefore, the imposition of sanctions in such

circumstances was based, as the Court noted in *Bridges*, upon a " 'concept of the most general and undefined nature.' " 314 U.S. at 260. Because the common law power of contempt is so general and undefined, the Court was concerned that, without evidence of a clear and present danger, fair public comment and criticism concerning a judge and the conduct of his judicial affairs would be "effectively discouraged." *Bridges*, 314 U.S. at 269.

By contrast, in the present case, the power of a Virginia court to punish out-of-court statements of the type published by Landmark is fixed by statute, Va. Code § 2.1-37.13, and the substantive offense for which the punishment may be imposed is clear and well-defined. The restraint upon expression imposed by the statute is limited, and it is related solely to the purpose sought to be served by the legislation: the preservation of the confidentiality of Commission proceedings. The statute does not seek to discourage any comment or criticism concerning a judge or the conduct of his judicial affairs save the disclosure of information resulting from a breach of the confidentiality of Commission proceedings.

Virginia Code § 2.1-37.13 represents a legislative declaration by the General Assembly, fortified by a plain statement of public intent expressed in the Virginia Constitution, that a clear and present danger to the orderly administration of justice would be created by divulgence of the confidential proceedings of the Commission. We believe this legislative declaration elevates the restriction upon speech and press involved in this case to a level of legal dignity not enjoyed by the contempt judgments involved in *Bridges, Pennekamp, Craig,* and *Wood.* Indeed, in *Wood*, which involved a Georgia contempt proceeding, the Supreme Court stated:

"Initially, however, it should be noted that the Georgia courts have determined that the power to punish for contempt of court is inherent in its state judiciary . . . and the Court of Appeals thus ignored the express limitations imposed by the Georgia Legislature in punishing out-of-court statements . . . . This holding thus deprives the judgment of coming to this Court 'encased in the armor wrought by prior legislative deliberation' . . . ." 370 U.S. at 385-86.

And, in *Bridges*, which involved a California contempt proceeding, the Supreme Court said:

"It is to be noted at once that we have no direction by the legislature of California that publications outside the court room which comment upon a pending case in a specified manner should be punishable. As we said in *Cantwell* v. *Connecticut,* 310 U.S. 296, 307-308, such a 'declaration of the State's policy would weigh heavily in any challenge of the law as infringing constitutional limitations ....' [H]ere the legislature of California has not appraised a particular kind of situation and found a specific danger ... sufficiently imminent to justify a restriction on a particular kind of utterance. The judgments below, therefore, do not come to us encased in the armor wrought by prior legislative deliberation. Under such circumstances, this Court has said that 'it must necessarily be found, as an original question,' that the specified publications involved created 'such likelihood of bringing about the substantive evil as to deprive [them] of the constitutional protection.' " 314 U.S. at 260-61.

As we have noted, the imposition of punishment upon Landmark in this case does not depend upon some undefined concept of judicial authority. Instead, the sanction imposed springs from a clear and well-defined legislative declaration that breach of the confidentiality of Commission proceedings is so contrary to the public interest [7] that it constitutes a substantive evil of immediate and serious peril to the orderly administration of justice and, therefore, should be punishable. Accordingly, we believe the judgment imposing the sanction in this case is fortified against Landmark's constitutional attack because it is "encased in the armor wrought by prior legislative deliberation," and it is strengthened further by the requirement of the Virginia Constitution that proceedings before the Commission "shall be confidential."

---

[7] *Cf. Cox Broadcasting Corp.* v. *Cohn,* 420 U.S. 469 (1975), a case involving a civil action for breach of privacy. The Supreme Court held that the First Amendment protected the revelation in a television broadcast of the name of a rape victim, although the disclosure was violative of a Georgia statute which made it a misdemeanor to publish or broadcast the name. The news reporter, however, had obtained the victim's name from the indictment in the criminal case, which was a public record made available to the reporter for his inspection. The Court stated:

"By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was there by being served." 420 U.S. at 495.

We must note, however, that in the *Bridges* opinion the Supreme Court did observe: "even the expression of 'legislative preferences or beliefs' cannot transform minor matters of public inconvenience or annoyance into substantive evils of sufficient weight to warrant the curtailment of liberty of expression." 314 U.S. at 263. But we believe the matters which, in the first place, prompted creation of the Judicial Inquiry and Review Commission, dictated the requirement of the Virginia Constitution that proceedings of the Commission "shall be confidential," and necessitated the enactment of the sanctions prescribed by Va. Code § 2.1-37.13, are much more than "minor matters of public inconvenience or annoyance." They are matters involving a serious and substantive evil — the imminent and substantial threat to the orderly administration of justice posed by the premature disclosure of the confidential proceedings of the Judicial Inquiry and Review Commission. And they are matters upon which courtroom evidence is unnecessary to sustain their truth and validity.

History tells us that the methods of dealing with disabled or unfit judges by legislative impeachment [8] or removal,[9] existing prior to creation of the Commission, were seldom used and generally unsatisfactory. The inadequacies of those methods prompted inquiry into other means of handling problem judges. Led by California, numerous jurisdictions have created commissions or other bodies to investigate complaints against judges. Along with Virginia, many of the jurisdictions have imposed requirements of confidentiality in commission proceedings. Note 6, *supra*.

The necessity for confidentiality of commission proceedings is self-evident from this statement:

"Proceedings before the Commission must be confidential. The initial job of the Commission will be to ascertain which complaints have sufficient merit to deserve serious attention. Obviously there is the risk that a disappointed litigant may seek to vent his wrath upon the judge by filing a complaint with the Review Commission, or that complaints will be filed

[8] Section 54 of the Constitution of 1902 (Article IV, Section 17 of the Constitution of 1971).

[9] Section 104 of the Constitution of 1902 (omitted from the new constitution).

upon other vexatious and frivolous grounds. Such complaints must be weeded out — hence the requirement of confidentiality of Commission proceedings." A. Howard, *Commentaries on the Constitution of Virginia* 764 (1974).

The California experience furnishes support for the confidentiality of commission proceedings:

"A prime feature of the Commission plan for judicial discipline is that, unlike the impeachment, recall, and election processes, the charges, and investigation thereof, are not made public until and unless a recommendation for censure, removal or retirement is made to the Supreme Court. The proceedings are entirely confidential up to that point. This gives the individual judge and thereby the judiciary reputation protection until a full scale investigation has been made and a competent body of peers has made an adverse decision on the merits of the charge. The shield of confidentiality also preserves reputations while the corrective influence of the Commission is being exerted on a judge who would otherwise be reluctant to change his behavior lest the public view this as an admission of prior misconduct . . . . Thus, reputations are preserved while allowing ample opportunity for complete investigation and voluntary corrective action." Buckley, *The Commission on Judicial Qualifications: An Attempt to Deal With Judicial Misconduct,* 3 U.S.F.L.Rev. 244, 255-56 (1968-1969).

Florida requires confidentiality of proceedings before its Judicial Qualifications Commission, the counterpart of our Judicial Inquiry and Review Commission. In discussing the Commission, the Florida Supreme Court has stated:

"The purpose is to process complaints concerning the judiciary from any and all sources, while requiring confidentiality as a means to protect both the complainant from possible recriminations and the judicial officer from unsubstantiated charges . . . . Eliminating the confidentiality of these proceedings would also eliminate many sources of information and complaints received by the Commission not only from lay citizens and litigants but also from lawyers and judges within the system." *Forbes* v. *Earle,* 298 So.2d 1, 4 (Fla. 1974).

Thus, the requirement of confidentiality in Commission proceedings (1) protects the reputation of an individual judge by shielding him from publicity involving frivolous complaints, (2) protects public confidence in the judicial system by preventing disclosure of a complaint against a judge until the Commission has determined the charge is well-founded, and (3) protects complainants and witnesses from possible recrimination by prohibiting disclosure of their identity prior to a determination that the complaint is meritorious.

Considering these matters, we believe it can be said safely, without need of hard in-court evidence, that, absent a requirement of confidentiality, the Judicial Inquiry and Review Commission could not function properly or discharge effectively its intended purpose. Thus, sanctions are indispensable to the suppression of a clear and present danger posed by the premature disclosure of the Commission's sensitive proceedings — the imminent impairment of the effectiveness of the Commission and the accompanying immediate threat to the orderly administration of justice.

The ultimate and real concern in this type of case is exemplified by a statement in *Pennekamp* v. *Florida:*

"[R]eviewing courts are brought in cases of this type to appraise the [press] comment on a balance between the desirability of free discussion and the necessity for fair adjudication, free from interruption of its processes." 328 U.S. at 336.

We recognize the public interest in information pertaining to judicial discipline and in free debate upon the conduct of the judiciary. *See Wood* v. *Georgia,* 370 U.S. at 392. We find, however, that the statute in question places the least possible restraint upon this public interest while, at the same time, it assures effective functioning of the Commission. When a complaint is filed with this court, the entire record of the Commission's proceedings becomes public. And, as we have noted previously, the statute does not curtail general comment or criticism concerning a judge or the conduct of his judicial affairs.

On balance, therefore, we find that the necessity of maintaining the integrity of the Judicial Inquiry and Review

Commission as an essential component in the administration of justice clearly outweighs any possible advantage of public disclosure of the Commission's proceedings prior to the filing of a complaint with this court. Accordingly, we affirm the judgment of the trial court.

*Affirmed.*

POFF, J., dissenting.

I dissent. The judgment should be reversed and final judgment should be entered for the defendant. In my view, the statute should be construed not to apply to this defendant under these circumstances. Construed otherwise, the statute offends the First Amendment.

As the parties agree and the majority recognize, there is utterly no evidence of record showing a "clear and present danger". The majority simply conclude that the General Assembly concluded that there was a danger so clear and present as to justify a statutory abridgement of the right to publish. The majority reach their conclusion unaided by legislative history and without benefit of a declaration of such danger in the statute or the Constitution which mandates the statute. Just as a court cannot infer the existence of a clear and present danger from allegations made in a contempt citation and adopt that inference as a conclusion of law, *Wood* v. *Georgia*, 370 U.S. 375 (1962), a court cannot infer the existence of a clear and present danger from the mere enactment of a penal statute.

If a restriction upon publication of lawfully-acquired information concerning the proceedings of a commission reviewing charges against a judicial officer can be constitutionally justified by a simple conclusion that publication poses a clear and present danger to the administration of justice, a similar conclusion could justify a similar restriction with reference to the proceedings of a Commission reviewing charges against an executive officer or a legislator.

I simply believe that, in order to justify a statutory exception to the constitutional guarantee, there must be an *evidentiary* showing of a clear and present danger to a legitimate governmental interest, and an evidentiary showing that the

statutory sanction is the minimum necessary to meet that danger and protect that interest. The legal presumption is in favor of the First Amendment and against the exception, and legal presumptions survive until rebutted by evidence.