# <u>VIRGINIA:</u>

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 21st day of April, 2022.*

Present:  Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Millette, S.J.


In Re:  Honorable Adrianne L. Bennett, Petitioner

Record No. 210489


Upon a Petition for Leave to Intervene and
Motion to Vacate Order Sealing a Sealing Order


On May 20, 2021, Judge Adrianne L. Bennett petitioned this Court under its original jurisdiction for writs of mandamus and prohibition in connection with a matter that was then pending before the Judicial Inquiry and Review Commission (JIRC).  We denied the petition one day later, and ordered the record of the case sealed, including the order disposing of Judge Bennett's petition and sealing the proceedings.  On July 8, 2021, Lee BHM Corporation, publisher of the *Richmond-Times Dispatch* ("the Publisher"), filed a "Petition for Leave to Intervene and Motion to Vacate Order Sealing a Sealing Order."  The Publisher seeks "to intervene for the limited purpose of obtaining access to the order sealing the records in this case."

In considering the petition brought by the Publisher, we first note that the mandamus case has reached finality, and allowing the Publisher to intervene in a case that has ended would be improper.  However, that does not end the inquiry.  Under the Constitution of Virginia, this Court is vested with the "judicial power of the Commonwealth."  Va. Const. art. VI, § 1.  This judicial power includes the inherent authority to control our Court records, and this inherent authority includes the power to unseal a record previously ordered sealed.  *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files."); *United States v. Pickard*, 733 F.3d 1297, 1300 (10th Cir. 2013) (A court can unseal documents "based upon the court's inherent supervisory authority over its own files and records.").  "Once a court orders documents before it sealed, the court continues to have

authority to enforce its order sealing those documents, as well as authority to loosen or eliminate any restrictions on the sealed documents." *Id.* A court exercises this authority on a discretionary basis "in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 589.

Thus, although a petition to intervene is not the proper vehicle to obtain access to previously sealed court records once a case has become final – a party cannot intervene in a case that has reached finality – in light of the relief sought, we will treat the Publisher's petition as a motion to unseal court records, and we will proceed to address the relief sought by the Publisher.

The Publisher asks us to unseal the order sealing the proceedings regarding Judge Bennett's mandamus petition. Noting that our sealing order does not state the rationale for the sealing order, we will sua sponte examine the propriety of sealing the entire proceeding.

The United States Supreme Court has held that the First Amendment protects a qualified right of access in criminal trials. In *Richmond Newspapers, Inc. v. Virginia*, a trial court excluded the press and public from a murder trial in Virginia state court. 448 U.S. 555, 575-76 (1980). In a 7-1 decision that produced four separate opinions, the Court held that the public has a First Amendment right of access to criminal trials. *Id.* at 569-70. Chief Justice Burger, who wrote the plurality opinion, examined the history of English and American criminal justice. He wrote that "the historical evidence demonstrates conclusively that . . . criminal trials both here and in England had long been presumptively open" to the public. *Id.* at 569. Two years later, in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982), a majority of the Court adopted this view of the First Amendment. The Court examined the constitutional validity of a Massachusetts statute that required trial judges to exclude the public from the courtroom during the testimony of the victim, in situations involving certain sexual offenses and an underage victim. *Id.* at 602. The Court concluded that this statute was invalid under the First Amendment. *Id.* at 610-11.

In *Press-Enterprise Co. v. Superior Court* (*Press-Enterprise I*), a trial judge closed nearly all of the voir dire proceedings in a case involving the rape and murder of a teenage girl, reasoning that, if the press were present in the courtroom, the venire "would lack the candor necessary to assure a fair trial." 464 U.S. 501, 503-04 (1984). In a unanimous decision, the Supreme Court held that the First Amendment right of access extends to criminal voir dire proceedings. The Court observed that public jury selection was the "common practice in

2

America when the Constitution was adopted," and stressed that openness "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Id.* at 508.

Two years later, in a case bearing the same name, *Press-Enterprise Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1 (1986), the Supreme Court examined whether a First Amendment right of access applies to preliminary hearings. *Id.* at 3. In that case, a magistrate judge, relying on a California statute, excluded the public from a lengthy preliminary hearing in a high-profile murder prosecution in order to protect the defendant's right to a fair trial. *Id.* at 3-4. The judge then refused to release the transcript of the hearing and sealed the record. *Id.* at 4-5. Examining its prior decisions in *Richmond Newspapers, Globe Newspaper*, and *Press-Enterprise I*, the Court adopted "tests of experience and logic" courts should employ in assessing whether the First Amendment protects a right of access to a specific judicial proceeding. *Id.* A court must first consider "whether the place and process have historically been open to the press and general public" (the "experience" prong). *Id.* at 8. Second, the court must assess "whether public access plays a significant positive role in the functioning of the particular process in question" (the "logic" prong). *Id.* at 9. If both prongs are met, a First Amendment right of access attaches to the proceeding in question, which can be denied only if the government's justification for closure withstands strict scrutiny. "These considerations of experience and logic are, of course, related, for history and experience shape the functioning of governmental processes. If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." *Id*. at 9.

Applying this test, the Court concluded that preliminary hearings have historically been open to the public and thus, the "experience" prong was satisfied. *Id.* at 10-11. Turning to the "logic" prong, the Court reasoned that in California, preliminary hearings are "sufficiently like a trial to justify the . . . conclusion" that public access "is essential to the proper functioning of the criminal justice system." *Id.* at 11-12. Finding both prongs satisfied, the Court held that a qualified First Amendment right of access attached to the preliminary hearing. *Id.* at 13.

The Supreme Court has not since its decisions in *Press-Enterprise I* and *II* had occasion to revisit its conclusion that the First Amendment provides a broad but not unlimited right of access to criminal trials and trial-like proceedings. Additionally, the Court has not addressed

3

whether the experience and logic test mandates a right of access to other judicial activities, including civil proceedings and court records. In *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (1993), the Court did clarify one aspect of the "experience" prong of the *Press-Enterprise II* test. The Court held that in determining whether the historical record establishes a "tradition of open[ness]," *id.* at 150, a court "does not look to the particular practice of any one jurisdiction, but instead 'to the experience in that type or kind of hearing throughout the United States.'" *Id.*

Although the United States Supreme Court has not addressed the point, we conclude that the same qualified right of access to proceedings and records that the Court has recognized in criminal cases should also be recognized in "civil trials and to their related proceedings and records." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012).

Relying on this guidance, we will review the Publishers request for the records of the mandamus proceeding using the two-step inquiry. First, we will examine whether there has been a history of public access to the records and proceedings. If such a right of access exists, the proceeding or records are presumptively open to the public. Under the second part of the test, proceedings can be closed, or the records sealed, if closing the proceeding or sealing the record is necessary to serve a compelling interest, and is narrowly tailored to serve that interest.

The present case was unprecedented because it concerned a request for judicial relief against a proceeding that is statutorily protected from disclosure to the public. Thus, the request to seal the proceedings in our Court was also unprecedented. Our review of the records prompts us to revisit our order sealing the records of the mandamus proceeding and to exercise our authority to unseal this order as requested by the Publisher. Orders from this Court have long been accessible to the public. In addition, in the interest of openness and transparency, we further unseal the remainder of the case sua sponte, with the exception of attachments to the petition for a writ of mandamus. Mandamus proceedings have a long tradition of openness. We see no reason to seal the petition and other pleadings.

We reach a different conclusion with respect to the attachments filed with the mandamus petition. Those attachments are records of a then pending proceeding before the Judicial Inquiry and Review Commission. By law, records of proceedings before the Commission are kept confidential. The statute begins with the command that "[a]ll papers filed with and proceedings before the Commission . . . shall be confidential and shall not be divulged." Code

4

§ 17.1-913(A). The statute contains some limited exceptions to this mandate of confidentiality, but none apply here. For example, the statute provides that "the record of any proceeding filed with the Supreme Court shall lose its confidential character." *Id.* Any "proceeding," in context, refers to disciplinary proceedings against a judge, not a mandamus proceeding like this one. Code § 17.1-913(A) specifies that "[a]ll records of proceedings before the Commission *which are not filed with the Supreme Court in connection with a formal complaint filed with that tribunal*, shall be kept in the confidential files of the Commission." *Id.* (emphasis added). The mandamus filed by Judge Bennett is not "a formal complaint filed with" this Court. Therefore, the exception does not apply, and the mandate of confidentiality does apply. The General Assembly, as the policymaking branch of our government, has determined that such records should be kept confidential. *See*, *e.g.*, *Transparent GMU v. George Mason Univ.*, 298 Va. 222, 250 (2019) (observing that "[p]ublic policy questions concerning where to draw the line with respect to [statutorily protected and unprotected information] fall within the purview of the General Assembly") (quoting *Daily Press, LLC v. Office of Exec. Sec'y of Supreme Court*, 293 Va. 551, 557 (2017)).

Furthermore, judicial disciplinary proceedings differ from ordinary civil or criminal proceedings. Nearly every state, including Virginia, protects the confidentiality of disciplinary proceedings against judges, for a variety of sound reasons:[1]

1. Encouraging the filing of complaints and protecting the complainant from possible retaliation;
2. Protecting judges from unwarranted complaints;
3. Maintaining confidence in the judiciary by avoiding premature announcement of groundless complaints; and

---

[1] In *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 834 (1978), the Supreme Court observed that:

> At the present time it appears that 47 States, the District of Columbia, and Puerto Rico, have established by constitution, statute, or court rule, some type of judicial inquiry and disciplinary procedures. All of these jurisdictions, with the apparent exception of Puerto Rico, provide for the confidentiality of judicial disciplinary proceedings, although in most the guarantee of confidentiality extends only to the point when a formal complaint is filed with the State Supreme Court or equivalent body.

4. Facilitating the work of a commission by giving it flexibility to accomplish its mission through voluntary retirement or resignation of offending judges.

The confidentiality accorded to judicial disciplinary hearings stands in contrast to ordinary civil and criminal trials, which benefit from a long tradition of openness. As one court noted, "[a]gainst this background [of protecting the confidentiality of judicial disciplinary hearings], the 'presumption of openness' gleaned from the history of criminal trials surveyed in *Richmond Newspapers* lacks force." *First Amendment Coal. v. Judicial Inquiry and Review Board*, 784 F.2d 467, 473 (3d Cir. 1986). It is true that we are dealing with attachments to a mandamus proceeding, not the actual proceeding before the Judicial Inquiry and Review Commission. That does not make a difference. If a litigant could bypass the confidentiality of judicial disciplinary proceedings by simply attaching a record of those proceedings to a pleading, the confidentiality protections would be largely illusory. Accordingly, although we unseal the remainder of the filings in the case, we conclude that the records of the Judicial Inquiry and Review Commission attached to the mandamus petition should remain under seal.


JUSTICE KELSEY, with whom JUSTICE CHAFIN joins, dissenting in part.

Judge Bennett filed a mandamus action in the Supreme Court of Virginia asking us to order the Judicial Inquiry and Review Commission ("JIRC") to reinstate her to the bench. From the start, Judge Bennett made clear that she did not want anyone but us to see the reason why JIRC had suspended her. The majority holds that Judge Bennett has a statutory right to keep that information secret and that the public has no constitutional right to break the seal of secrecy. Disagreeing with both holdings, I respectfully dissent in part.

I.

Mandamus is an "ancient common-law writ," *Howell v. McAuliffe*, 292 Va. 320, 351 (2016), involving an exercise of a core judicial power subject "to the principles of the common law," *see* Code § 17.1-309. Article VI, Section 1 of the Constitution of Virginia places that power within the "original jurisdiction" of the Supreme Court of Virginia. A "court of original jurisdiction" is the court where the dispute is "first heard." Black's Law Dictionary 445 (11th ed. 2019). Appellate courts act as trial courts when presiding over mandamus proceedings in their original jurisdiction — the most famous example being *Marbury v. Madison*, 5 U.S. (1

6

Cranch) 137 (1803). Consistent with this longstanding tradition, we have held that a mandamus proceeding before the Supreme Court of Virginia should not be thought of as an appeal from a lower court or tribunal and cannot be used as a "substitute or guise" for an appeal. *In re Commonwealth*, 278 Va. 1, 14 (2009).

Because the mandamus petition filed by Judge Bennett was not an appeal of a JIRC decision, the JIRC record did not come to us as a normal part of the appellate process. Instead, Judge Bennett filed the JIRC documents as exhibits to her petition. Holding that mandamus cases do not adjudicate the merits of disciplinary actions against judges or provide appellate review of JIRC decisions, a per curiam order of our Court dismissed Judge Bennett's mandamus action as meritless. I am in full agreement with that decision.

A single sentence of the dismissal order, however, granted Judge Bennett's motion to seal the entire Supreme Court of Virginia "[p]roceedings," not just the JIRC record, or any portion thereof, that she had filed as attachments to her mandamus petition. *In re: Bennett*, Record No. 210489, slip op. at 3 (Va. May 21, 2021) (unpublished). The "[p]roceedings," *id.*, included all pleadings filed in our Court, all attachments to those pleadings, any interlocutory or final orders, any audio recording of argument, and any communications between the Court and the parties. The public was not given any notice of the ex parte sealing or any opportunity to contest it.[1] The very order sealing the "[p]roceedings," *id.*, was itself sealed, which, in my experience, is unprecedented.

Seeking to open up this proceeding to the public, the newspaper publisher has not only asked us to unseal our "sealing order" but has also asked us to provide "constitutionally-

---

[1] *See Richmond Newspapers, Inc. v. Commonwealth*, 222 Va. 574, 589-90 (1981) (*Richmond II*) (holding that "interested members of the public should have the right to be heard"); *Shenandoah Publ'g House v. Fanning*, 235 Va. 253, 259 (1988) (applying the procedural guidelines announced in *Richmond II* to judicial records in civil proceedings); *cf. Ashcroft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (requiring courts to "allow interested parties a reasonable opportunity to object"); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253-54 (4th Cir. 1988) (applying the First Amendment standard to a motion in a civil case and holding that "the district court must give the public adequate notice that the sealing of documents may be ordered" and "provide interested persons 'an opportunity to object to the request before the court makes its decision'" (alteration and citation omitted)); *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (finding that the district court erred because "[t]he public was entitled to notice of counsel's request to seal [documents], and an opportunity to object to the request before the court made its decision").

mandated particularized findings for sealing" if the existing sealing order does not include them. Pet. Leave to Intervene and Mot. to Vacate at 2; *see also id.* at 15. The sealing order, as the newspaper publisher has today discovered, did not provide any such findings. Now that the matter is before the Court, we should own up to our mistake and provide statutory and constitutionally satisfactory reasons — if any exist — that justify our continued sealing of the JIRC documents. We have not done so, however, because there are none.

## II.

The governing statute, Code § 17.1-913, balances the need to protect JIRC confidentiality while simultaneously preserving the public's constitutional right to open courts. The statute should be understood in the context of its historical background. In 1978, the United States Supreme Court observed that the statute "implement[ed] the constitutional mandate of confidentiality" found in Article VI, Section 10 of the Constitution of Virginia. *See Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 830 n.1 (1978), *rev'g*, 217 Va. 699 (1977). At that time, Article VI, Section 10 stated that "[p]roceedings before the Commission shall be confidential." This "shall" command barred the legislature from ever eliminating or even tailoring the secrecy of "[p]roceedings before the Commission." Va. Const. art. VI, § 10 (amended 1999).

The constitutional mandate of JIRC secrecy proved to be too much for the citizens of Virginia. In 1998, the Virginia electorate repealed the mandate and replaced it with the present language, which states that "[p]roceedings and documents before the Commission may be confidential as provided by the General Assembly in general law." Va. Const. art. VI § 10 (effective January 1999); *see also* 1997 Acts chs. 768, 772, at 1833, 1837; 1998 Acts chs. 730, 770, at 1751, 1844. The shift from "shall" to "may" was purposeful. *See generally* John Dinan, The Virginia State Constitution 175-77 (2d ed. 2014). The 1998 amendment downgraded the confidentiality of JIRC proceedings from a constitutional requirement to a mere legislative option. This should give us considerable pause. A constitutional amendment is a powerful statement of the polity, and the statement being made here was that confidentiality — even in disciplinary proceedings before JIRC — should not be constitutionally sacrosanct.

Against this backdrop, Judge Bennett argues that we should extend JIRC secrecy to a mandamus proceeding before the Supreme Court of Virginia. Doing so, however, directly contradicts Code § 17.1-913(A). With the clearest of language, this statute declares that "the

record of any [JIRC] proceeding filed with the Supreme Court shall lose its confidential character." Code § 17.1-913(A). This is one of those occasions in which, despite the sometimes anfractuous lexicon of the law, simple words have simple meanings. *Any* JIRC proceeding includes the one involving Judge Bennett. *Filed* includes the JIRC documents she filed with the Supreme Court. And *shall lose its confidential character* means that the JIRC record cannot (as opposed to may or may not) be hidden from the public. The plain meaning of Code § 17.1-913(A) thus maintains the confidentiality of JIRC records in disciplinary proceedings "before the Commission" but removes any secrecy surrounding these records when they are filed in a judicial proceeding before the Supreme Court of Virginia. That conclusion should be particularly true where, as here, the party clinging to the confidentiality of these documents is the very party filing them in the most public of forums.

Given the clarity of the statutory text, I find unpersuasive Judge Bennett's contrary view that confidentiality is lost only when JIRC initiates an enforcement action in the Supreme Court of Virginia. The loss of confidentiality in that particular instance is merely an example — not a nullification — of the generally applicable and wholly unqualified legislative command that "the record of any [JIRC] proceeding filed with the Supreme Court shall lose its confidential character." Code § 17.1-913(A). I agree that in some instances context can support an interpretation even when the text alone does not. But the contextual backdrop of this case is the fairly recent (in constitutional terms) amendment to Article VI, Section 10, which demoted the secrecy of disciplinary proceedings before JIRC from a constitutional mandate to a legislative option. This hardly seems like the time to extend JIRC secrecy to judicial proceedings before the Supreme Court of Virginia.

At any rate, no matter how broadly or narrowly we consider competing contextual interpretations, none of them can overlook the continued relevance of the common law. Mandamus proceedings have a unique history deeply rooted in the common-law traditions of England. *See Marbury*, 5 U.S. (1 Cranch) at 146-47 (citing 3 William Blackstone, Commentaries *110-11). Virginia inherited those traditions, *White v. United States*, 300 Va. 269, 277-78 (2021), and since its founding has protected them with the maxim that "[s]tatutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms," *Giordano v. McBar Indus., Inc.*, 284 Va. 259, 267 n.8 (2012) (citation omitted).

9

One of those traditions is the "generally accepted common-law rule of openness" that presumes that "public access applies in civil proceedings to judicial records." *Shenandoah Publ'g House, Inc. v. Fanning*, 235 Va. 253, 258 (1988).[2] Judicial records include, among other things, "pleadings and any exhibits." *Id.* at 257. To overcome the common-law presumption, the party seeking secrecy must prove a "compelling" interest in nondisclosure and, even then, must demonstrate that it can be advanced in a manner that is "least restrictive of the public's interest." *Id.* at 258-59. No compelling interest exists merely because disclosure poses "risks of damage to professional reputation, emotional damage, or financial harm, stated in the abstract." *Id.* at 259 (citation omitted). Nor can a court "base its decision on conclusory assertions alone, but must make specific factual findings." *Id.* (quoting in parenthetical *In re Washington Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986)).

Judge Bennett's interpretation of Code § 17.1-913(A) replaces the rebuttable, common-law presumption of openness with a conclusive, statutory requirement of secrecy. She bases this interpretation upon a policy assumption that the General Assembly intended to extend JIRC confidentiality to mandamus proceedings before the Supreme Court of Virginia. I do not know what the legislators subjectively intended, but I do know what they said: "[T]he record of any [JIRC] proceeding filed with the Supreme Court shall lose its confidential character." Code § 17.1-913(A). That is clear enough for me. To the extent it is unclear to others, the canon of strict construction successfully protects the flanks of the common-law presumption of judicial transparency.

III.

Judge Bennett's assertion that she has a statutory right to demand that we seal the JIRC documents, even if it were correct, does not end the analysis. *See generally Landmark Commc'ns, Inc.*, 435 U.S. at 840-42 (determining the constitutionality of a provision in Code § 2.1-37.13, former Code § 17.1-913)*; Baugh v. Judicial Inquiry & Rev. Comm'n*, 907 F.2d 440,

---

[2] *See also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) (noting that "historically both civil and criminal trials have been presumptively open"); *Lotz v. Commonwealth*, 277 Va. 345, 351 (2009); Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 12.8, at 954-56 (7th ed. 2020); *cf. In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 291 (4th Cir. 2013); *Ashcroft*, 218 F.3d at 302; *Rushford*, 846 F.2d at 252-54. *See generally Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1068-70 (3d Cir. 1984) (discussing the historical presumption of openness for civil proceedings).

443 (4th Cir. 1990) (same). We still have to decide whether doing so in this case would violate the open-courts doctrine protected by the First Amendment of the United States Constitution and Article I, Section 12 of the Constitution of Virginia. *See, e.g.*, *Press-Enterprise Co. v. Superior Ct. Cal.*, 464 U.S. 501, 509-10 (1984) ("Where the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." (alterations and citation omitted)); *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 454-55 (2013) (requiring "specific findings" showing a "compelling governmental interest" and a "narrowly tailored" effort to advance that interest); *Richmond II*, 222 Va. at 588 (requiring "an overriding interest articulated in findings").[3]

Judge Bennett has never proffered a constitutionally "compelling governmental interest," *Daily Press, Inc.*, 285 Va. at 455, that would justify denying public access to the two JIRC documents attached to her mandamus petition. And even if she had done so, Judge Bennett has not suggested how keeping these documents indefinitely sealed is "narrowly tailored," *id.*, to serve her unarticulated interest. In her written argument in support of sealing the JIRC documents[4] and in oral argument before the full Court, *see* Oral Argument Audio at 14:43 to 20:45, Judge Bennett advanced only the statutory argument adopted today by the majority. She did not address the possibility that if her interpretation were correct, the public's constitutional right of access to the courts would supersede the statute.

For its part, the majority acknowledges the constitutional issue but then sidelines it with the observation that "judicial disciplinary hearings" are not like "ordinary civil and criminal trials, which benefit from a long tradition of openness." *Ante* at 6. This sets up the assertion that the constitutional "presumption of openness" applies in the latter scenario but "lacks force" in

---

[3] To be sure, the very fact that Judge Bennett's interpretation of the statute could be read to violate clearly established constitutional law is reason enough to reject her statutory interpretation under the constitutional-avoidance principle. *See Jennings v. Rodriquez*, 138 S. Ct. 830, 842 (2018); *Concrete Pipe & Prods. Cal., Inc. v. Construction Laborers Pension Tr. S. Cal.*, 508 U.S. 602, 628-29 (1993); *Commonwealth v. Swann*, 290 Va. 194, 196-97 (2015) (per curiam); *Commonwealth v. Doe*, 278 Va. 223, 229-30 (2009).

[4] Judge Bennett made this argument in her previously sealed Motion to Seal the Proceedings, which the newspaper publisher is reading for the first time today. Judge Bennett did not mention this argument in her written response to the newspaper publisher's motion to vacate the sealing order. *See* Resp. to Lee BHM Corp.'s Pet. Leave to Intervene at 1.

11

the former.  *Ante* at 6 (quoting *First Amend. Coal. v. Judicial Inquiry & Rev. Bd.*, 784 F.2d 467, 473 (3d Cir. 1986)).[5]  This dichotomy is flawed.  When the Court considered Judge Bennett's petition and dismissed it, the Court was not conducting a judicial disciplinary hearing.  The Court was reviewing a mandamus petition seeking a common-law writ within our original jurisdiction — a core constitutional proceeding unique to the judiciary.  Based upon its misapplied dichotomy, the majority categorically deems all JIRC records filed in any civil proceeding before the Virginia Supreme Court (including a mandamus proceeding) to be outside the reach of the public's right of access guaranteed by the First Amendment of the United States Constitution and Article I, Section 12 of the Constitution of Virginia.  No case cited stands for this closed-courts thesis, and I have found no precedent supporting it.

IV.

These observations lead me inescapably back to first principles.  The Constitution of Virginia vests the Supreme Court of Virginia with the "judicial power of the Commonwealth." Va. Const. art. VI, § 1.  Implicit in this ancient power is the warning that "[t]here is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *America Online, Inc. v. Anonymous Publicly Traded Co.*, 261 Va. 350, 362 (2001) (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)).  The constitutional duty to heed this warning applies whenever "experience and logic" supports the public's interest in knowing what their courts are doing and have done.  *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 291 (4th Cir. 2013).  Like so many great truths, this experience-and-logic rule is simple but ambiguous.  Even so, I cannot understand how it does not apply here.  Neither experience nor logic justified the initial sealing of this "proceeding."  And nothing in today's order justifies our continued sealing of the JIRC documents.

---

[5] The lacks-force holding in *First Amendment Coalition* had nothing to do with the open-courts doctrine applicable to civil proceedings filed in courts.  Instead, the Court of Appeals for the Third Circuit was reviewing a federal district court injunction ordering a state disciplinary board to make public certain proceedings conducted before the board in cases in which the record had not been "sent to the [state supreme] court, and thus made public." *See First Amend. Coal.*, 784 F.2d at 469.  To make sure its holding was not misunderstood, the Third Circuit emphasized that "we assume, but do not decide, that there is a constitutional right of access to disciplinary proceedings at some stage." *First Amend. Coal.*, 784 F.2d at 472.

12

Because everything in this case should be unsealed, I respectfully dissent in part.

This order shall be published in the Virginia Reports.

A Copy,

Teste:

Clerk