# Shenandoah Publishing House, Inc.

## v.

# Virginia K. Fanning, Executrix, etc., et al.

Record No. 850146

April 22, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice

*James L. Berry* for appellant.

*Phillip C. Stone (Ronald D. Hodges; Douglas G. Schneebeck; Wharton, Aldhizer & Weaver*, on brief), for appellees Winchester Memorial Hospital and H. George White, M.D.

No briefs or arguments for Virginia K. Fanning, Executrix of the Estate of Walter A. Fanning, Deceased, Winchester Orthopaedic Associates, Ltd., Richard A. Creasy, M.D., Winchester Anesthesiologists, Inc. and V. Miller, C.R.N.A.

*Amicus Curiae:* Virginia Press Association; Virginia Association of Broadcasters; The Richmond Professional Chapter, Society of Professional Journalists, Sigma Delta Chi; and Virginia Press Women. David C. Kohler (Alexander Wellford; Christian, Barton, Epps, Brent & Chappell, on brief), for appellant.

POFF, J., delivered the opinion of the Court.

The issues framed on this appeal stem from challenges to several protective orders entered in a wrongful death case that sealed the discovery data, pleadings, and all the records in that case including the final order approving a compromise settlement.

On December 20, 1982, Virginia K. Fanning, executrix of the estate of Walter A. Fanning, filed a motion for judgment against several individual and corporate defendants seeking damages for the wrongful death of the decedent. In separate counts, the pleading alleged that death was the proximate result of acts and omissions constituting medical malpractice, breach of contract and warranty, and assault and battery. The defendant health care providers filed responsive pleadings, and the parties engaged in extensive discovery proceedings.

At the request of all parties, the trial court entered an order on October 24, 1983. Confirming oral instructions to the clerk, the order sealed all "the files of this cause" and "the contents of the

record". The order further provided that "the news media . . . shall be notified of the entry of this order with opportunity to be heard thereon on 10/31/83 at 8:00 AM."

Shenandoah Publishing House, Inc., moved for leave to intervene, the trial court granted the motion, and the parties filed legal memoranda and argued the question whether the court had erred in entering the October 24 order. In an order dated November 28, 1984 incorporating a letter opinion, the court ruled that "the file and pleadings in this case shall remain sealed."

The parties to the civil suit reached a compromise settlement, and granting their petition, the court entered an order December 12, 1984 approving the settlement. *See* Code § 8.01-55. Responding to a motion filed jointly by the parties, the court entered an order December 27, 1984 sealing the petition and the December 12 order.

As entered of record, the December 27 order also provided that "the remaining portions of this file be . . . unsealed." Apparently, this provision had been included in a tentative draft of the order, and the page containing that provision mistakenly had been attached to the order the trial court signed. Accordingly, when the court learned of the clerical error, it entered a new order dated February 12, 1985, *nunc pro tunc* December 27, 1984, deleting that provision and sealing all "the file and pleadings in this case".

We granted Shenandoah an appeal. Virginia Press Association; Virginia Association of Broadcasters; The Richmond Professional Chapter, Society of Professional Journalists, Sigma Delta Chi; and Virginia Press Women, requested leave to appear on brief *amici curiae* in support of Shenandoah's appeal, and we granted the request. As stated by Shenandoah, the questions raised by its several assignments of error are whether the public and, derivatively, the news media, have a constitutional, common-law, or statutory right of access to the records in a civil case and, if so, "[w]hat is required to seal a civil record?" The public's right to attend and observe the conduct of a civil trial is not in issue in this appeal.

## I. PREFACE

To facilitate our analysis, we separate the data sealed by the trial court into two classes. Although the compromise settlement obviated the conduct of an adversarial trial, we will call the first class "pretrial documents". This class includes all data assembled

by the parties in the discovery process authorized by Part Four of the Rules of Court, Rules 4:0 through 4:14. We will refer to the second class as "judicial records". The documents in this class include the pleadings and any exhibits or motions filed by the parties and all orders entered by the trial court in the judicial proceedings leading to the judgment under review.

## II. THE JUDICIAL RECORDS

■ The First and Fourteenth Amendments of the United States Constitution implicitly guarantee the public a qualified right of access to a criminal trial. *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555, 580 (1980) (*Richmond Newspapers I*). In *Richmond Newspapers I*, the United States Supreme Court, reviewing the history of criminal trials in England and colonial America, concluded that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Id.* at 573. The Court noted, however, that its holding "does not mean that the First Amendment rights of the public and representatives of the press are absolute." *Id.* at 581 n.18. In a later opinion written by the same author, the Court explained:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press-Enterprise Co.* v. *Superior Court of Cal.*, 464 U.S. 501, 510 (1984).

■ We have adopted and applied the principles and standards articulated in *Richmond Newspapers I*. Eschewing a First Amendment analysis in *Richmond Newspapers* v. *Comm.*, 222 Va. 574, 281 S.E.2d 915 (1981) (*Richmond Newspapers II*), we declared orders closing preliminary hearings in three criminal cases unconstitutional under Article I, Section 12, of the Virginia Constitution, and we held that "intervention [by the public] is necessary to give substance to the qualified right of access".[1] *Id.*

---

[1] On brief, the appellee health care providers argue that Shenandoah "has no standing" to challenge the protective orders. This contention was not urged below, and the question

at 590, 281 S.E.2d at 923. Until now, we have not been asked to decide, and the United States Supreme Court never has decided expressly, whether the public has a constitutional right of access to judicial records in civil trials and, if so, whether that right is absolute or qualified.

■ We find it unnecessary to conduct a constitutional analysis. Code § 17-43 provides in part:

> The records and papers of every court shall be open to inspection by any person and the clerk shall, when required, furnish copies thereof, except in cases in which it is otherwise specially provided.

The broad sweep of this language is significant. It makes no distinction between criminal and civil proceedings. In legislative history, Code § 17-43 extends back to the Code of 1849 that references Acts of the Assembly "1820-21, p. 104, ch. 74, § 1." Construing the language of the statute as it has endured for more than a century, we conclude that the General Assembly intended to recognize the generally accepted common-law rule of openness and to declare its power to make statutory exceptions to the rule.

■ Such a conclusion was implicit in our decision in *Charlottesville Newspapers v. Berry*, 215 Va. 116, 206 S.E.2d 267 (1974). There, a trial judge had closed the file in a civil proceeding, verbally instructed all involved not to disclose "any matter which took place", and directed that the judicial records in all subsequent civil cases remain closed "until 21 days have elapsed from the date of . . . filing". *Id.* at 117, 206 S.E.2d at 267-68. Finding "no statutory authority" for the judge's action and nothing in the record "justifying such actions under his inherent power", we ruled that the judge "shall not . . . deny public access to . . . pleadings, motions, and suit papers in . . . new civil actions". *Id.* at 118, 206 S.E.2d at 268.

■ In light of the legislative history of Code § 17-43 and its common-law underpinnings, we are of opinion that, subject to statutory exceptions, a rebuttable presumption of public access applies in civil proceedings to judicial records as we have defined that term. We further believe that, to overcome that presumption,

was not raised by assignment of cross-error. Accordingly, we will not notice the argument on appeal. Rules 5:17(c) and 5:25.

the moving party must bear the burden of establishing an interest so compelling that it cannot be protected reasonably by some measure other than a protective order, *see Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 563-65 (1976) (suggesting as possible alternatives, change of venue, postponement of trial, sequestration of jurors), and that any such order must be drafted in the manner least restrictive of the public's interest. We adopt the procedural guidelines announced in *Richmond Newspapers II*, 222 Va. at 590-91, 281 S.E.2d at 923-24, and those stated in *Press-Enterprise Co.*, 464 U.S. at 510 (quoted above).

Although it appears that the procedures followed below did not comply fully with these guidelines, we note that, once advised of the media's interest in access, the trial court ordered that the media "be notified of the entry of [the original sealing] order with opportunity to be heard"; scheduled a special hearing for Shenandoah's benefit; permitted Shenandoah to intervene in the proceedings; and heard argument and considered adversary memoranda on the issue Shenandoah raised. We believe, however, that the trial court struck the wrong balance between the interests of the parties to the compromise settlement and the public's right of access to the judicial records in the proceedings approving that settlement.

In its letter opinion, the trial court concluded that any "common law right of access a newspaper might have . . . in a civil suit should yield in this instance to the desire of all parties not to publicize the pleadings of an essentially private dispute between non-public figures with all the obvious risks of emotional damage to both parties and professional and financial harm to the defendants". "The claims made in the pleadings," the trial court felt, "probably would reflect adversely upon the professional reputations of the . . . defendants, with financial and possible emotional consequences."

On appeal, the parties agree that the desire of the litigants is not sufficient reason to override the presumption of openness. Nor do we believe that risks of damage to professional reputation, emotional damage, or financial harm, stated in the abstract, constitute sufficient reasons to seal judicial records. *See Press-Enterprise Co.*, 464 U.S. at 510 (quoted above); *see also In re Washington Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986) ("court may not base its decision on conclusory assertions alone, but must make specific factual findings").

■ Here, the judicial records in issue were accumulated in a wrongful death action. In Virginia, settlements of wrongful death claims must be approved by the courts. Code § 8.01-55. The public has a societal interest in learning whether compromise settlements are equitable and whether the courts are administering properly the powers conferred upon them.[2] Moreover, the people have a vital interest, one of personal and familial as well as community concern, in cases involving claims of medical malpractice on the part of licensed practitioners and other health care providers.

■ We hold, therefore, that the trial court erred in sealing that class of data we have denominated "judicial records". We now consider the several protective orders insofar as they denied the public access to the "pretrial documents".

## III. THE PRETRIAL DOCUMENTS

■ In an opinion rejecting a First Amendment challenge to a state court's protective order prohibiting dissemination of data acquired in civil discovery proceedings, the Supreme Court explained that "pretrial depositions and interrogatories are not public components of a civil trial." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). "Discovery rarely takes place in public. Depositions are scheduled at times and places most convenient to those involved. Interrogatories are answered in private." *Id.* at 33 n.19.

■ The Court noted that Rule 26(b)(1) of the state court's discovery rules provided that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" and that discovery was not confined to information that is competent as evidence at trial so long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 29-30.

Commenting upon these rules, the Court said:

Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery per-

---

[2] In *C.L. v. Edson*, 140 Wis. 2d 168, 185, 409 N.W.2d 417, 423 (1987), a personal injury suit, the court rejected the argument that "making . . . settlements public will have a chilling effect on future litigants and will counteract the public interest in encouraging settlements."

mitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.

The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders.

The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

*Id.* at 34-36 (footnotes omitted).

Although the issue in *Seattle Times Co.* was freedom of the press (*i.e.*, the right to publish) rather than the public's right of access, the Court's opinion is relevant to the issue before us. Both cases are civil in nature. Both involve protective orders impressed on pretrial documents. And the discovery rules central to the Supreme Court's rationale and our Rules 4:1(b)(1) and (c) are essentially the same.

 Shenandoah cites no authority, and we find none, respecting either a pre-judgment or a post-judgment right of public access to discovery data at common law,[3] and in Virginia, trial courts are expressly authorized by our discovery rule "for good cause shown [to] . . . make any order which justice requires to

---

[3] There is no question that the press and the public jointly possess a common-law right to inspect and copy judicial records and public documents. Nevertheless, this court has observed that private "documents collected during discovery are not 'judicial records'". Thus, while appellants may enjoy the right of access to "pleadings, docket entries, orders, affidavits or depositions *duly filed*," appellants' common-law right of access does not extend to information collected through discovery which is not a matter of public record.
*In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355 (11th Cir. 1987) (citations omitted) (emphasis in original).

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". Rule 4:1(c). We hold that the reasons assigned by the trial judge in his letter opinion constitute "good cause" to enter the pre-judgment protective orders sealing the pretrial documents.

## IV. CONCLUSION

Upholding the rulings of the trial court in part, we will affirm the final judgment insofar as it approves the compromise settlement. We will reverse the final judgment in part, however, and because, in the proceedings below, the bench and bar did not have the benefit of the applicable standards and guidelines as we have defined them in this opinion, we will remand the case for a further hearing, if the parties be so advised, limited to the question whether the judicial records should remain sealed.

*Affirmed in part,
reversed in part,
and remanded.*