PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Millette and
Lemons, S.JJ.

THE DAILY PRESS, LLC,
THE VIRGINIAN-PILOT MEDIA COMPANIES, LLC,
and PETER DUJARDIN

v. Record No. 210787

COMMONWEALTH OF VIRGINIA,
and ALBIN TREVOR PEARSON
                                                            OPINION BY
                                                    JUSTICE D. ARTHUR KELSEY
CITY OF NEWPORT NEWS                                    OCTOBER 20, 2022

v. Record No. 210827

COMMONWEALTH OF VIRGINIA,
THE DAILY PRESS, LLC,
THE VIRGINIAN-PILOT MEDIA COMPANIES, LLC,
PETER DUJARDIN,
and ALBIN PEARSON

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Margaret P. Spencer, Judge Designate

These consolidated appeals challenge three rulings by the trial court in a pending criminal

case. The first barred public access to a pretrial bail hearing, and the second kept certain motions

and exhibits under seal. Two newspaper publishers and a reporter filed an appeal challenging

these rulings. The third ruling, challenged on appeal by the City of Newport News, found that

the City lacked standing to oppose any public access to sealed documents that the City had

previously produced in response to a subpoena. For the following reasons, we reverse all three

holdings and remand for further proceedings consistent with this opinion.

I.

The underlying case involves a second-degree murder indictment and ancillary charges

against Albin Trevor Pearson, a Newport News police officer. The alleged crimes occurred in

2019 during an attempt to arrest the victim. Pearson was released on pretrial bail shortly after his

arrest. Claiming that Pearson posed a danger to the community, the Commonwealth requested a

subpoena duces tecum to obtain various documents, including any prior investigations of Pearson's conduct as a police officer and any City of Newport News emails regarding the alleged offense. Over the City's objection, the trial court issued the requested subpoena and ordered that the subpoenaed documents be filed with the clerk of court pursuant to Rule 3A:12(b)(2), which required the initial filing to be sealed until further order of the court.[1]

After reviewing the subpoenaed documents, the Commonwealth filed a "Motion to Revoke Bond" (more precisely a motion to revoke bail),[2] arguing that the sealed documents established probable cause to believe that Pearson's pretrial liberty would pose a danger to the community. In support of its motion to revoke, the Commonwealth relied heavily on two prior incidents involving Pearson that were documented in the sealed records. The Commonwealth filed both the motion to revoke and the attached exhibits under seal. The Commonwealth also filed a motion to preclude Pearson from arguing certain defenses and attached to the motion various sealed documents as exhibits.

At the beginning of the bail-revocation hearing, the Commonwealth moved to close the hearing and thereby preclude the public — including a reporter, Peter Dujardin — from being in the courtroom. The court continued the matter to a later date to provide the reporter and the public an opportunity to be heard. Prior to the reconvened hearing, Dujardin, along with his employers, The Daily Press, LLC and The Virginian-Pilot Media Companies, LLC, filed a joint

---

[1] To the extent that we mention facts found only in the sealed record, we unseal those specific facts, finding them relevant to our decision.

[2] The Commonwealth's motion is titled "Motion to Revoke Bond." Though a common phrase, this expression is imprecise. The Commonwealth actually sought an order revoking Pearson's bail, resulting in his pretrial incarceration, not an order revoking a bond previously securing the original bail decision. *See* Code § 19.2-119 (defining "bail" and "bond"); Code § 19.2-132 (permitting the court to either "increase the amount of such bond" or "revoke bail").

motion to intervene.[3]  They objected to the motion to close the upcoming bail-revocation hearing and requested that the court unseal the Commonwealth's motion to revoke Pearson's bail, including its exhibits, and the exhibits supporting the Commonwealth's motion to preclude certain defenses.  In response, the Commonwealth repeated its request for a closed hearing and restated its view that the sealed documents provided "credible information, unavailable to the Court or the Commonwealth at the time bond was granted, that there is probable cause to believe that [Pearson] is a danger to the community."  J.A. at 163.[4]

At the later hearing on the Commonwealth's motion to close the bail hearing, the prosecutor stated that he had submitted the sealed documents because they were "relevant to the issue of danger to the community," which the court "must consider in a bond determination." *Id.* at 170.  In support of his request for excluding the public from the hearing, the prosecutor made two arguments.  First, he contended that the pandemic had made jury selection difficult and that the sealed documents could have the potential of prejudicing Pearson's defense.  Second, the internal affairs files of the police department are generally considered to be confidential.  Both reasons, he concluded, would protect Pearson's trial from being "impermissibly tainted by unfairly prejudicial pretrial publicity" and would give the Commonwealth the ability to "fully articulate the reasons as to why what is in the sealed bond revocation motion constitutes probable cause" to revoke Pearson's bail.  *Id.* at 172.  The court granted the Commonwealth's request to close the bail-revocation hearing, which reconvened a few days later.

---

[3] Dujardin, The Daily Press, LLC, and The Virginian-Pilot Media Companies, LLC filed a joint appeal making the same arguments.  For convenience, we will refer to them collectively as the "Newspaper Publishers."

[4] The consolidated cases have separate joint appendices.  All citations to the Joint Appendix in this opinion refer to the appendix filed with Record No. 210787.

After the closed bail-revocation hearing, the court heard from the Newspaper Publishers on their remaining requests for access. The court denied the Newspaper Publishers' motion for access to the transcript of the bail-revocation hearing conducted in their absence. The court also denied their motion to unseal more than 450 pages of documents, which included the motion to revoke bail and its supporting exhibits. In support of its decisions, the court relied upon three rationales. First, the court expressed its concern "about the difficulty in seating jurors" because of the pandemic. *Id.* at 301. Second, the court focused on the potential that public access to the information "would impair the defendant's rights to a fair trial," particularly in light of widespread publicity of other cases involving police shootings. *Id.* at 302. Finally, the court observed that the sealed documents referred to incidents involving Pearson that "occurred prior to 2019" and thus "have no relevance to what happened in 2019 when the crimes alleged in the indictment occurred." *Id.* at 303.

While this dispute was taking place, the City of Newport News filed a motion arguing, among other things, that the sealed documents the Newspaper Publishers sought to access included reports concerning Pearson created by the Internal Affairs Division of the Newport News Police Department. Pearson participated in these internal investigations, the City claimed, as a coercive condition of his employment. Using these documents against him in a criminal proceeding, the City reasoned, would violate Pearson's right against self-incrimination protected by the Fifth Amendment. In addition, the City continued, Virginia law generally treats these investigations as confidential in order to encourage the full cooperation of the investigated officer and any other cooperating witnesses. Finally, the City contended that under Rule 3A:12(b), the subpoenaed documents could not become judicial records subject to public review until they were admitted into evidence at trial.

The trial court denied the City's motion, stating that the City's "arguments were rejected by the [c]ourt for lack of standing." J.A. at 323. In a later order, the court again held that the City had no standing to "insert itself into this criminal case" after it had provided the subpoenaed documents. *Id.* at 331. Invoking the "inherent authority" of the court under Code § 8.01-271.1, the court enjoined the City "from filing any motions or inserting itself in this case without prior approval from the court." J.A. at 331-32.[5]

## II.

The Newspaper Publishers filed an appeal of the court's closure and sealing decisions.[6] The City filed an appeal of the court's refusal to consider the City's motions to prohibit the public disclosure of the subpoenaed documents attached as exhibits to the Commonwealth's motions. Because the disputes in both appeals involve similar issues, we have consolidated these cases for purposes of appellate review and have divided our discussion into two parts: the closure of the bail-revocation hearing and the sealing of the judicial records.

### A. BAIL-REVOCATION HEARING

#### 1. *General Principles*

The scope of the open-courts doctrine presupposes that "'[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are

---

[5] The July 19, 2021 order enjoining the City occurred after the notice of appeal in this case. In an interlocutory appeal, however, any uncontested facts and proceedings in a lower court's record that are relevant to the issues appealed may be considered by an appellate court.

[6] The Newspaper Publishers' petition for appeal identified the Commonwealth and Pearson as appellees. The Office of the Commonwealth's Attorney for the City of Suffolk filed a brief titled, "Brief of Appellees," but the body of the brief and the certificate of service suggest that the brief was filed solely on behalf of the Commonwealth. *See* Commonwealth's Br. at 1, 18-19. Counsel for Pearson did not file a separate brief; nor did Pearson's counsel make any appearance on appeal.

prohibited from observing.'  Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Press-Enterprise Co. v. Superior Ct. of Cal.*, 464 U.S. 501, 509 (1984) (*Press-Enterprise I*) (citation omitted).  The scope of this doctrine has been debated for centuries, but its existence as an essential check on the exercise of judicial power was recognized as early as the Norman Conquest and continues to hold as "important a role in the administration of justice today as it did for centuries before our separation from England."  *Id.* at 505, 508.

In Virginia, the open-courts doctrine has the protection of the United States Constitution, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-80 (1980) (*Richmond I*), the Virginia Constitution, *see Richmond Newspapers, Inc. v. Commonwealth*, 222 Va. 574, 588 (1981) (*Richmond II*), a 100-year-old statute, *see* Code § 17.1-208, and our enduring reliance on historical English common law, *see Shenandoah Publ'g House, Inc. v. Fanning*, 235 Va. 253, 258 (1988) (construing current Code § 17.1-208, which "has endured for more than a century" and codified "the generally accepted common-law rule of openness"); *cf. White v. United States*, 300 Va. 269, 277 & n.5 (2021) (applying Code § 1-200).  These bulwarks of our law make clear that "[t]here is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *America Online, Inc. v. Anonymous Publicly Traded Co.*, 261 Va. 350, 362 (2001) (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)).

In the context of criminal proceedings, the doctrine imposes a presumption of transparency on one of the most basic functions of government.  "The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public and consequently fall within the

6

responsibility of the press to report the operations of government." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975). For this reason, the United States Supreme Court has applied the doctrine to criminal trials, *see Globe Newspaper Co. v. Superior Ct. for Cnty. of Norfolk*, 457 U.S. 596, 604-06 (1982), jury voir dire hearings, *see Press-Enterprise I*, 464 U.S. at 505, and preliminary hearings, *see El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 149-50 (1993) (per curiam); *Press-Enterprise Co. v. Superior Ct. of Calif.*, 478 U.S. 1, 10 (1986) (*Press-Enterprise II*), and we have extended the doctrine to pretrial suppression hearings and hearings on motions in limine, *Richmond II*, 222 Va. at 586-88.

Even when applicable, the doctrine does not open the doors of every courtroom in every criminal case. The public's right of access "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). "Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Id.* This duty of special care employs a rebuttable presumption favoring a right of access. A party seeking to rebut the presumption has the burden of proving that the denial of public access "is necessitated by a compelling governmental interest" and that any bar to access is "narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510 (citation omitted). Under this approach, a court cannot close the proceeding without first determining whether "reasonable alternatives" to closure can accommodate the government's compelling interests. *Presley v. Georgia*, 558 U.S. 209, 214 (2010) (citation omitted) (interpreting analogous principles protected by the Sixth Amendment right to a public trial).[7]

---

[7] As the United States Supreme Court said in *Presley*, we also conclude here: "The extent to which the First and Sixth Amendment public trial rights are coextensive is an open

7

On each of these issues, a court must make "findings adequate to support the closure." *Id.* (citation omitted). These findings must be made "even when they are not offered by the parties" because "[t]he public has a right to be present whether or not any party has asserted the right." *Id.*; *see also Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 455 (2013) (requiring "specific findings" showing a "compelling governmental interest" and a "narrowly tailored" effort to advance that interest); *Richmond II*, 222 Va. at 588 (requiring "an overriding interest articulated in findings" (citation omitted)).

The rebuttable presumption safeguarding the open-courts doctrine protects a particularly important "community therapeutic value" in criminal cases. *Press-Enterprise I*, 464 U.S. at 508 (citation omitted); *see also Richmond II*, 222 Va. at 585 (citation omitted). Because "[c]riminal acts, especially violent crimes, often provoke public concern, even outrage and hostility," providing public access to criminal proceedings gives citizens the opportunity to decide for themselves if "the law is being enforced and the criminal justice system is functioning." *Press-Enterprise I*, 464 U.S. at 509. "Proceedings held in secret would deny this outlet and frustrate the broad public interest." *Id.* "[B]y subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism," the open-courts doctrine plays an essential role in "effective judicial administration." *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).

2. *Barring the Public from the Bail-Revocation Hearing*

With these background principles, we turn to the Newspaper Publishers' argument that the trial court erred in barring the public from the hearing to address the Commonwealth's motion to revoke Pearson's bail. We begin by asking whether the open-courts doctrine applies to

question, and it is not necessary here to speculate whether or in what circumstances the reach or protections of one might be greater than the other." *Presley*, 558 U.S. at 213.

8

pretrial bail hearings, a question of first impression in Virginia. Appellate courts that have addressed this issue elsewhere, however, have found little trouble concluding that the doctrine applies to pretrial bail hearings. *See, e.g.*, *Seattle Times Co. v. United States Dist. Ct. for W. Dist. of Wash.*, 845 F.2d 1513, 1516-17 (9th Cir. 1988); *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984); *United States v. Chagra*, 701 F.2d 354, 364-65 (5th Cir. 1983); *United States v. Edwards*, 430 A.2d 1321, 1344-45 (D.C. 1981); *State v. Williams*, 459 A.2d 641, 650 (N.J. 1983).

These courts have found, as do we, that "considerations of experience and logic," *In Re: Bennett*, 301 Va. 68, 70 (2022) (per curiam) (citation omitted), require that pretrial bail hearings be included within the scope of the open-courts doctrine. This conclusion recognizes that "the bail decision is one of major importance to the administration of justice, and openness will help to assure the public that the decision is properly reached." *In re Globe Newspaper Co.*, 729 F.2d at 52. "Pretrial detention clearly has a substantial relation to preventing injury to the public," *Edwards*, 430 A.2d at 1341, and "[p]retrial release proceedings require decisions that attract significant public interest, and invite legitimate and healthy public scrutiny," *Chagra*, 701 F.2d at 363. Those concerns are particularly true here. No Virginia court should admit to bail a pretrial detainee if there is "probable cause to believe that . . . [h]is liberty will constitute an unreasonable danger to . . . the public." Code § 19.2-120(A)(2). Because it would make no sense to categorically exclude members of the public from a judicial hearing addressing their own personal safety, we hold that "the public has a First Amendment right of access to pretrial proceedings setting and modifying bail," as well as to any "documents on which the bail decisions are based." *In re Globe Newspaper Co.*, 729 F.2d at 52.

We next ask whether the trial court in this case made "findings adequate to support the closure," *Presley*, 558 U.S. at 214 (citation omitted), of the bail-revocation hearing. The court gave three reasons for its closure order: (i) general concerns over the difficulty in seating jurors during the pandemic; (ii) the potential prejudice to Pearson's right to be tried by an impartial jury, particularly given recent publicity involving police shootings; and (iii) the fact that the evidence presented at the bail-revocation hearing had no relevance to the alleged crime. Limiting our review to these stated reasons, we conclude that none rebuts the constitutional presumption of public access to the bail-revocation hearing.

As for the first reason, the Commonwealth has abandoned this rationale on appeal. "The pandemic is a non-issue, your honor," counsel stated at oral argument; "I don't . . . even want to address that because juries were being seated at the time this case . . . came before the court." Oral Argument Audio (Record No. 210787) at 19:20 to 19:35. Though not bound by this concession, we nonetheless accept it. No party presented evidence suggesting that at the time of the closure decision the Newport News Circuit Court was unable to assemble venires for jury trials. Nor did any party in the trial court make a factual proffer suggesting as much.[8] We thus find this reason inadequate to rebut the presumption that the bail-revocation hearing should have been open to the public.

The second reason — the degree to which pretrial publicity might prejudice Pearson's right to an unbiased jury — is one of the few reasons that could justify the closure of a pretrial

---

[8] The only evidence submitted on this issue was an article from Virginia Lawyers Weekly from October 2020 reporting that some courts in Norfolk were having difficulty in seating jurors because of the pandemic. That report's dateline, however, was a year before Pearson's then-scheduled trial, six months before the bail-revocation hearing, and before any COVID-19 vaccine had been approved by the U.S. Food and Drug Administration for distribution to the public. Nothing in the article, moreover, described the specific conditions facing the Newport News Circuit Court at the time of the hearing.

10

hearing in a criminal case. *See, e.g.*, *In re Globe Newspaper Co.*, 729 F.2d at 58-59 (holding that the trial court properly closed the portions of a bail hearing that included electronic surveillance materials not yet determined to have been legally obtained). The possibility of prejudice is never enough, however, as that could be hypothesized as a potential risk in every criminal case. To be sure, "pretrial publicity[,] even pervasive, adverse publicity[,] does not inevitably lead to an unfair trial." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976); *see also Press-Enterprise II*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of that [fair trial] right." (citation omitted)).

To determine whether pretrial publicity constitutes a "compelling governmental interest," *Press-Enterprise I*, 464 U.S. at 510 (citation omitted), courts must ask not merely whether there is a "reasonable likelihood" of prejudice but rather whether a "substantial probability" of prejudice exists, *Press-Enterprise II*, 478 U.S. at 14. As Professor LaFave has observed:

> Although [the substantial probability] standard was stated in the context of the preliminary hearing, it has been viewed as the appropriate standard for "fair-trial" closures of all parts of the criminal process to which the First Amendment [r]ight of access applies, and precluding disclosure by sealing records that otherwise are subject to the First Amendment right of access.

6 Wayne R. LaFave et al., Criminal Procedure § 23.1(e), at 292 & n.243 (4th ed. 2015). In plain terms, this means that the risk of prejudice must be so palpable and the need to combat it so necessary that a trial court could not confidently rely on the voir dire process to ameliorate the risk. That process, when properly managed, provides the parties with adequate opportunities to question prospective jurors and to exercise peremptory and for-cause strikes in order to ensure an unbiased trial jury. Rule 3A:14(a)(4) requires the trial court to ask prospective jurors whether, among other things, they have "acquired any information about the alleged offense or the

11

accused from the news media or other sources and, if so, whether such information would affect [their] impartiality in the case." Counsel thereafter have as "a matter of right," *LeVasseur v. Commonwealth*, 225 Va. 564, 580 (1983) (interpreting Code § 8.01-358), the opportunity to ask additional, appropriate questions to determine whether a "juror does not stand indifferent in the cause," Code § 19.2-262.01.

In this case, the opportunity to conduct voir dire constitutes a "reasonable alternative[]," *Presley*, 558 U.S. at 214, to the trial court's decision to bar the public from the bail-revocation hearing. The court could have also considered "sequestration of jurors" or a "change of venue" to provide additional safeguards. *Shenandoah Publ'g House, Inc.*, 235 Va. at 258-59; *see also Nebraska Press Ass'n*, 427 U.S. at 563-64 (viewing a change in venue and jury sequestration as possible "alternatives"); *Richmond II*, 222 Va. at 584 (noting the alternatives provided in Virginia to change venire, change venue, question prospective jurors, conduct voir dire, and sequester jurors). With these safeguards available, we see no basis for the court's concern that Pearson's right to an unbiased jury would not be fully protected. It was, after all, the Commonwealth — not Pearson — that first made the motion to close the bail-revocation hearing. Pearson's counsel later orally joined in the motion in response to a question from the trial court, but counsel did so with the caveat that he did not "have any legal authority to make that request." J.A. at 178. In short, barring the public from the bail-revocation hearing was ill-fitted for the potential harm and was not a "narrowly tailored" measure, *Press-Enterprise I*, 464 U.S. at 510.[9]

---

[9] We appreciate the trial court's concern with the high-profile nature of this prosecution. Many cases in which the open-courts doctrine has been applied, however, involve high-profile circumstances. *See, e.g.*, *Press-Enterprise II*, 478 U.S. at 3-4 (applying the doctrine to transcripts of a preliminary hearing in a death-penalty case involving the alleged murder by a

12

The final reason for closing the hearing was the court's concern that information from some of the sealed documents was discussed during the hearing. This information, the court stated, addressed incidents involving Pearson "that occurred prior to 2019" and thus "have no relevance to what happened in 2019 when the crimes alleged in the indictment occurred." J.A. at 303. That statement may be true, but it is answering the wrong question. The only issue before the court was whether to revoke Pearson's bail — not whether Pearson was innocent or guilty of the indicted crimes. Evidence of the alleged crimes is admissible at a bail hearing, *see* Code § 19.2-120(B)(i), but so is evidence having nothing to do with the alleged crimes.[10] Under Code § 19.2-120(A), evidence tending to show "probable cause" that the accused is a flight risk or would pose an "unreasonable danger" to himself or anyone else is relevant to a bail determination. The trial court was mistaken when it thought that the evidence of events that

---

nurse of 12 patients); *Press-Enterprise I*, 464 U.S. at 503 (opening a courtroom for access to voir dire in a case involving an alleged rape and murder of teenage girl); *Globe Newspaper Co.*, 457 U.S. at 606-10 (applying the open-courts doctrine to trials involving minor victims); *Richmond I*, 448 U.S. at 559 (applying the doctrine to a murder trial being conducted for the fourth time after press coverage of the first three trials); *Daily Press, Inc.*, 285 Va. at 450-51 (requiring public access to sealed exhibits in a case involving the murder of an infant); *Richmond II*, 222 Va. at 579-84 (releasing the transcripts of previously closed suppression hearings involving three separate murder cases).

[10] When deciding to admit or deny bail, a court "shall" consider all relevant evidence including, but not limited to,

> the history of the accused or juvenile, including his family ties or involvement in employment, education, or medical, mental health, or substance abuse treatment; his length of residence in, or other ties to, the community; his record of convictions; his appearance at court proceedings or flight to avoid prosecution or convictions for failure to appear at court proceedings; and whether the person is likely to obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness, juror, victim, or family or household member as defined in § 16.1-228.

Code § 19.2-120 (omitting subdivision numbers).

13

"occurred prior to 2019," J.A. at 303, should be kept secret because those facts had no relevance to Pearson's guilt or innocence on the charged crimes. The Newspaper Publishers' right of access to a bail hearing was not limited to only those facts and arguments that would also be admissible in or relevant to the trial.

For these reasons, the court erred by closing the doors of the courtroom to the Newspaper Publishers and the public at large. The decision to grant or to deny pretrial bail requires in all cases a judicial assessment of the risk that the defendant's freedom could be a threat to the safety of others. Except in the rarest of circumstances, this decision must be made in open court so that the public — including victims of the defendant's charged crimes and any potential victims of his future crimes — would know how and why, not simply what, the court has ruled on the issue.

Having found no merit in the three rationales articulated by the trial court for closing the hearing, we have independently reviewed the transcript of the hearing and determined that there is no other basis for it to remain sealed. For this reason, we will unseal the transcript and make it available to the Newspaper Publishers and the public on the date that we issue our appellate mandate pursuant to Rule 5:36.

## B. SEALING THE COMMONWEALTH'S MOTIONS AND EXHIBITS

We next turn to the question whether various documents associated with the Commonwealth's motion to revoke bail and motion to preclude various defenses should remain sealed. Both the Commonwealth, as appellee in the Newspaper Publishers' appeal, and the City of Newport News, as the appellant in its separate appeal, argue that the trial court properly maintained these documents under seal. The Newspaper Publishers disagree and argue that the sealed documents should be unsealed. The disputed documents are indexed in the sealed record as follows:

14

- the Commonwealth's cover letter and pleading titled, "Motion to Revoke Bond" with two exhibits and

- the Commonwealth's cover letter and "Appendix to its Memorandum of Law in Support of its Motion to Preclude the Defenses of Self-Defense, Defense of Others, and Character Evidence of the Victim" with Exhibits 1, 2A, 2B, 2C, 2D, 3A, 3B, 3C, 3D, 6, 7, 8, and 9.

The sealed documents are almost 450 pages in total.[11]

The exhibits in the sealed record appear to be documents obtained from the City in response to a subpoena from the Commonwealth. These documents, the City states, are "internal administrative investigations of prior, unrelated matters conducted by the Newport News Police Department's (NNPD's) Internal Affairs Division (IA)." City's Br. at 2. Objecting to any unsealing of these documents, the City filed in the trial court a "Motion to Reconsider Motion to Quash, Strike Commonwealth's Pleading, and Enter Protective Order Pursuant to Rule 3A:12" and a later "Motion to Prohibit Disclosure of Discovery Materials Pursuant to Rule 3A:12 and the Court's Contempt Powers." J.A. at 136-47; R. at 892-904. Neither of these two motions were sealed. The court refused to consider the motions on the ground that the City had no standing to insert itself into a pending criminal case after the City had provided the subpoenaed documents.[12]

---

[11] On Appeal, the Newspaper Publishers did not specifically address the "Defendant's Response to the Commonwealth's Motion to Revoke Bond," which is also found in the sealed record, and thus, we have not included it in our analysis.

[12] The trial court added that the City's previous objections to the Commonwealth's subpoenas were rejected by the court and that ruling became "law of the case for all future proceedings in the same litigation in the same court, unless successfully challenged in an appellate court." J.A. at 330-31. In context, it appears that the court concluded that it had no authority to reconsider, modify, or vacate its earlier order. If so, the court misapprehended the law-of-the-case doctrine. "The law-of-the-case doctrine has no binding effect on a trial court prior to an appeal." *In re Brown*, 295 Va. 202, 224 (2018) (citation omitted).

15

On appeal, the City argues that it had standing to object to the Newspaper Publishers' effort in the trial court to unseal the City's subpoenaed documents and continues to have standing to contest their efforts to obtain the same relief on appeal. For their part, both the Commonwealth and Newspaper Publishers argue in support of the trial court's holding that the City had no standing either in the trial court or on appeal. On the merits, however, they part company. The Commonwealth argues that all the documents should remain sealed, and the Newspaper Publishers argue that none of the disputed documents should be.

### 1. *The City's Standing*

We begin with the threshold question of standing. Both the Commonwealth and the Newspaper Publishers argue that the City never moved to intervene as a party to the criminal case and thus has no standing even now to assert its interests on appeal. Because we disagree with how this question has been framed, we find the proffered answer unpersuasive.

Intervention is a broad concept that means different things in different contexts. In civil cases, for example, Rule 3:14 provides that "[a] new party may by leave of court file a pleading to intervene as a plaintiff or defendant to assert any claim or defense germane to the subject matter of the proceeding." "[T]he Rule's history includes a strong adherence to limiting intervention to those parties who are legitimately plaintiffs or defendants in litigation because the nature of their claim includes some right that is involved in the litigation." *Hudson v. Jarrett*, 269 Va. 24, 34 (2005) (interpreting the predecessor to Rule 3:14). *See generally* Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 9.13[B], at 747-49 (7th ed. 2020).

No similar rule applies to criminal cases, and understandably so, as it seems difficult to imagine a non-party intervening as either a prosecuting authority or as a co-defendant. In the context of the open-courts doctrine, however, non-parties are nonetheless permitted to make a

16

special appearance in criminal cases to assert their claimed right of access to the court proceedings and records. Like many other courts, we treat these special appearances as being within the broad definition of intervention. *See Richmond II*, 222 Va. at 590 (referring to the right of access as "the public's right of intervention in a criminal proceeding").[13] Whether by that name or another, we agree that a non-party may assert a right-of-access claim during a pending criminal case given the court's "inherent authority to control [its] records, and this inherent authority includes the power to unseal a record previously ordered sealed." *In Re: Bennett*, 301 Va. at 68. When asserting such a claim, the claimant is not seeking to become a party subject to the adversarial pleadings but instead is merely making a special appearance solely on the ancillary issue of access to the judicial proceeding and court records. *Id.*

In this case, the City was not seeking access to judicial records, but the opposite — to prohibit access to its own records subpoenaed by the Commonwealth and filed under seal. Even so, though they were not styled as motions to intervene, the City's motions were consistent with the process governing subpoenaed documents. Rule 3A:12(b)(2) requires subpoenaed documents received by the clerk of court in a criminal case to "be placed under seal" and to be made available for "examination and review" only by the parties and their counsel. The "entity or individual subpoenaed" has a right under Rule 3A:12(b)(3)(iv) to make an appearance in the case seeking, among other things, a court order "prohibiting or limiting disclosure" of the documents.

That is just what the City did in this case. The City was not joining the proceeding either

---

[13] *See also In re Associated Press*, 162 F.3d 503, 507-08 & n.6 (7th Cir. 1998) (collecting cases demonstrating that intervention is the "appropriate procedural mechanism" by which the public asserts the right of access); LaFave, *supra*, § 23.1(e), at 298-99 & n.276 (explaining that lower courts "have imposed procedural requirements" to ensure "interested members of the public an opportunity to intervene" on closure motions).

17

to prosecute or defend the criminal charges against Pearson.  Instead, the City was making a special appearance for a very specific, narrow purpose — to object to the public dissemination of previously sealed documents obtained from the City under Rule 3A:12.  Just as the press has a right to intervene in an ongoing criminal case to assert a right to access court records, a non-party whose records were subpoenaed has a right to contest any attempt to unseal these records.  The trial court erred, therefore, in holding that the City had no standing in this case.

### 2.  *The Sealed Documents*

Based upon its ruling that the City had no standing, the trial court declined to address the City's arguments in favor of keeping these documents out of the public's view.  Because we serve as "a court of review, not of first view," *Bailey v. Loudoun Cnty. Sheriff's Off.*, 288 Va. 159, 181 (2014) (citation omitted), in cases in which a successful appellant was not heard on a preserved issue below, we typically remand the case to the trial court with instructions to decide the disputed matter in the first instance.  In the present circumstances, however, the City makes several purely legal arguments as to why we should end the dispute here by striking the Commonwealth's motions and thereby allowing all of the City's exhibits to maintain their sealed status.  We find none of these arguments persuasive.

### a.

The City first argues that the sealed documents are not judicial records subject to the open-courts doctrine.  The parties agree that the doctrine generally applies to judicial records in criminal and civil cases.  *Daily Press, Inc.*, 285 Va. at 454-55 (holding that the "constitutional right of access extends to the inspection of documents filed in [criminal] proceedings"); *Globe Newspaper Co. v. Commonwealth*, 264 Va. 622, 628 (2002) ("The right of access to judicial proceedings and records is well-established."); *Shenandoah Publ'g House, Inc.*, 235 Va. at 258

18

(applying the doctrine to judicial records in civil cases).[14]  The parties disagree, however, on what specific documents in a court's record constitute judicial records subject to the doctrine.

We have not provided in prior cases, nor do we today, a "comprehensive and exclusive" list of judicial records covered by the open-courts doctrine.  *See Smith v. Richmond Newspapers, Inc.*, 261 Va. 113, 117 (2001).  It is enough for present purposes simply to recognize that judicial records typically include "pleadings and any exhibits or motions filed by the parties and all orders entered by the trial court in the judicial proceedings leading to the judgment under review," *Shenandoah Publ'g House, Inc.*, 235 Va. at 257,[15] as well as "documents which contributed to determinations made by the court or jury," LaFave, *supra*, § 23.1(d), at 277-80 (collecting cases).  *Cf.* Code § 17.1-208(A) (incorporating the definition of "court records" from Code § 17.1-292, which includes "any record maintained by the clerk in a civil, traffic, or criminal proceeding in the court, and any appeal from a district court").[16]

---

[14] *See also Lotz v. Commonwealth*, 277 Va. 345, 351 (2009); *Perrault v. Free Lance-Star*, 276 Va. 375, 387 (2008); *Smith v. Richmond Newspapers, Inc.*, 261 Va. 113, 117-18 (2001).

[15] *See* Rule 1:4 ("The mention in a pleading of an accompanying exhibit, of itself and without more, makes such exhibit a part of the pleading.").

[16] We explained in *Daily Press, Inc.* the relationship between the relevant statutory and constitutional principles:

> Code § 17.1-208 explicitly states that any records and papers maintained by the clerk "shall be open to inspection by any person."  With respect to our analysis, Code § 17.1-208's statutory presumption of access is equivalent to the constitutional right of access.  Court documents can only be sealed on the basis of "an interest so compelling that it cannot be protected reasonably by some measure other than a protective order," and "any such order must be drafted in the manner least restrictive of the public's interest."

*Daily Press, Inc.*, 285 Va. at 456 (quoting *Shenandoah Publ'g House, Inc.*, 235 Va. at 259).

These broad definitions, however, are subject to an important limiting principle. When applying the constitutional open-courts doctrine, documents "filed with the court are 'judicial records' *if* they play a role in the adjudicative process, or adjudicate substantive rights." *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (emphasis added).[17] If not, they are subject only to common-law principles, which, unlike the constitutional doctrine, may be superseded by statute. The constitutional doctrine polices only the judicial process, not the entire litigation process.

Thus, a document that bears no relation to the adjudicative process does not become subject to the open courts doctrine just because a litigant files it with a court. For example, a litigant's attempt to abuse the judicial process — by filing documents for the sanctionable purpose of public dissemination of irrelevant, scandalous information — cannot create judicial records entitled to the constitutional presumption of public access. The open-courts doctrine, all courts agree, should not be employed in a manner that inadvertently encourages the whims of malicious litigants. The public has a right to know what their courts are doing or have already done, but they do not have a constitutional right to know the contents of documents which play no role in the adjudicative process.

This limiting principle does not apply to this case. As explained earlier, *supra* at 8-9, a motion to revoke bail plays an integral role in the adjudicative process of criminal courts. The public has a strong interest in knowing whether, how, and why a court concludes that a criminal defendant awaiting trial should be released back into the community or held in pretrial detention. The decision focuses on whether releasing the defendant would constitute an "unreasonable

___

[17] *See also In re Providence J. Co.*, 293 F.3d 1, 9-10 (1st Cir. 2002); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252-53 (4th Cir. 1988).

danger" to the public or whether he would attempt to abscond from justice.  Code § 19.2-120(A)(2).  Equally important is the public's interest in knowing how broadly or narrowly the courts interpret and apply the governing "probable cause" standard, *id.*, which is a level of certitude less than proof beyond a reasonable doubt, less than clear-and-convincing evidence, and less still than the preponderance standard, which requires a "showing that such a belief be correct or more likely true than false," *Evans v. Commonwealth*, 290 Va. 277, 287 (2015) (citation omitted).

In the present case, the Commonwealth's sealed motion to revoke bail (accompanied by its sealed exhibits) argued that two incidents from the defendant's time as a police officer were relevant to the question whether his pretrial release would pose a risk to public safety.[18]  For purposes of applying the open-courts doctrine, it does not matter whether these alleged incidents were sufficient to warrant the relief sought by the motion, the vacatur of Pearson's bail.  What does matter is whether these incidents were arguably relevant to the judicial decision to grant or deny the relief requested.  The incidents in the sealed documents are relevant if they should, could, or did play any role in the adjudicative process of granting or denying bail.  The same can be said of the Commonwealth's motion to preclude various defenses.  Whether the motion was successful or not, it and its supporting exhibits were arguably relevant to a core issue before the court:  what defenses Pearson could legally assert at trial and what jury instructions should be

---

[18] The City contends that the trial court violated Rule 3A:12(b) by entering an order permitting the Commonwealth to "use" the previously sealed subpoenaed documents as exhibits to the Commonwealth's two sealed motions.  City's Br. at 36-49.  Under the City's interpretation of Rule 3A:12(b), the rule only permits litigants and their counsel to examine and review the sealed documents but not to later use them as sealed exhibits to sealed motions.  Like the trial court, we disagree.  Rule 3A:12(b) authorizes parties and counsel to examine and review sealed, subpoenaed documents for the very purpose of potentially using them in court.  The only restriction in the text of the Rule 3A:12(b) is that the documents remain sealed until further order of the trial court.

issued in support of those defenses. Applying the traditional definition of judicial records, therefore, the Commonwealth's motions and supporting exhibits fall within the general scope of the open-courts doctrine.

b.

The City next argues that an exception to these general principles applies to this case because the Commonwealth, by attaching these sealed exhibits to its sealed motions, violated Pearson's constitutional right against self-incrimination, *see Garrity v. New Jersey*, 385 U.S. 493, 499-500 (1967). In that case, investigators questioned police officers suspected of criminal wrongdoing. The investigators told the officers that they could refuse to cooperate, but, if they did so, they would be subject to a state "forfeiture-of-office statute" that would result in the officers losing their jobs. *Id.* at 494-98. The Supreme Court held that the officers' inculpatory statements were "coerced," rendering them inadmissible as proof of their guilt in a later criminal prosecution. *Id.* at 500; *see also United States v. Indorato*, 628 F.2d 711, 716 (1st Cir. 1980) (describing the "two common features" of a *Garrity* violation).

Against this backdrop, the City proffers that the "records at issue are the City's confidential records pertaining to internal administrative investigations of prior, unrelated matters conducted by the Newport News Police Department's (NNPD's) Internal Affairs Division (IA)." City's Br. at 2. The City then states: "Said internal investigations contain statements that Pearson and other City employees were compelled to give under threat of termination. Such statements cannot be used in a prosecution pursuant to *Garrity* . . . and its progeny." *Id.*[19] The apparent logic is that the City coerced involuntary statements from Pearson,

_____

[19] *See also* City's Brief at 35 (referring to the "compelled statements"); *id.* at 46-47 (stating that Pearson was "compelled to give [statements] under threat of termination" in

22

and thus, the Commonwealth's sealed motion and sealed exhibits (which included Pearson's allegedly coerced statements) could not be properly viewed as judicial records because they were filed in violation of "*Garrity*'s self-executing immunity," *Wiley v. Mayor & City Council of Balt.*, 48 F.3d 773, 778 (4th Cir. 1995).

The City's reasoning falters at the very start. The use of Pearson's allegedly coerced statements may or may not violate *Garrity*,[20] but that debate is between Pearson and the Commonwealth. Under settled law, "the privilege against self-incrimination 'is solely for the benefit of the witness,' and 'is purely a personal privilege of the witness.'" *Rogers v. United States*, 340 U.S. 367, 371 (1951) (citations omitted). It is a "shield of silence" that cannot be "vicariously asserted." *United States v. Skolek*, 474 F.2d 582, 584 (10th Cir. 1973); *cf. Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (applying the same rule to assertions of Fourth Amendment rights).

It necessarily follows that the City — the entity that claims to have coerced Pearson's incriminating statements — has no third-party standing to assert Pearson's constitutional right

---

violation of *Garrity*); J.A. at 289 (asserting that Pearson's incriminating statements were "compelled" and thus subject to *Garrity*).

[20] The *Garrity* doctrine involves multifaceted issues, many of which remain unsettled. *See generally* David M. Nissman & Ed Hagen, Law of Confessions §§ 3:7 to 3:8, 3:24, at 82-90, 126-31 (2d ed. 2022); Peter Westen, *Answer Self-Incriminating Questions or Be Fired*, 37 Am. J. Crim. L. 97, 98-111 (2010). Given our holding in this case, we offer no opinion on whether Pearson's statements in prior interviews were involuntary under the *Garrity* standard, *see generally* Steven D. Clymer, *Compelled Statements from Police Officers and* Garrity *Immunity*, 76 N.Y.U. L. Rev. 1309, 1343-47, 1361-62 (2001), or whether the attempted use of these statements in a bail hearing in a criminal case involving later, unrelated charges would violate *Garrity*, *see Vogt v. City of Hays*, 844 F.3d 1235, 1240-41 (10th Cir. 2017) (noting a circuit split on whether the right against self-incrimination is a "trial right" or a right that can be asserted pretrial), *cert. dismissed as improvidently granted*, 138 S. Ct. 1683 (2018). The City's apparent concession that a *Garrity* violation occurred in this case involves an issue of law that does not bind us or the trial court. *See Butcher v. Commonwealth*, 298 Va. 392, 395 (2020) (refusing to be bound by a litigant's "concession of law").

23

against self-incrimination. While the City has standing to assert its own confidentiality rights in the dispute over the sealed documents, it may not assert Pearson's rights. For this reason alone, the trial court in this case was right to refuse to consider the City's argument that unsealing the sealed documents would somehow violate Pearson's constitutional right not to be coerced into making incriminating statements.

c.

The City also contends that Virginia law "requires that sealed discovery documents be admitted into evidence before they become unsealed." City's Reply Br. at 10. The City's proffered authority for this premise begins with the text of Rule 3A:12(b)(2), which states: "Until such time as the subpoenaed materials are admitted into evidence they must remain under seal *unless* the court orders that some or all of such materials be unsealed." Rule 3A:12(b)(2) (emphasis added). The City then cites to *Lotz v. Commonwealth*, 277 Va. 345, 351 (2009), which held that certain documents "admitted into evidence" should be unsealed. Reading Rule 3A:12(b)(2) and *Lotz* together, the City concludes that we have established a "bright line test" that "pinpoint[s]" the judicial act of admitting documents into the evidentiary records as the moment "they become judicial records." City's Br. at 26.

This novel argument, if true, would mean that no discovery documents initially sealed under Rule 3A:12(b)(2) would ever become "judicial documents" available for public inspection if a case ended (as most criminal cases do) prior to an evidentiary trial. The City's view would also forever bar the public from access to previously sealed exhibits that were offered in open court but, for whatever reason, were not admitted into evidence.

We find no support for the City's position in either the text of Rule 3A:12(b)(2) or our holding in *Lotz*. The unqualified "unless" proviso in Rule 3A:12(b)(2) authorizes a court in its

24

discretion to unseal documents whenever it is prudent to do so. The proviso does not expressly

state or reasonably imply that a court has no discretion to unseal documents that are not admitted

into evidence. As for *Lotz*, we held only that exhibits in the evidentiary record were judicial

records under the open-courts doctrine. We never said the inverse — that documents not

admitted into evidence cannot be considered judicial records. We thus reject the City's argument

that sealed discovery documents must be admitted into evidence before they can be unsealed.

d.

The City also argues that the sealed documents fall outside the scope of the general

definition of judicial records because before being attached as exhibits to the Commonwealth's

motions, they were discovery documents obtained by subpoena. Discovery documents, the City

concludes, are per se excluded from the definition of judicial documents subject to the open-

courts doctrine. We accept the first premise of this argument but reject its conclusion.

The City would be correct if the subpoenaed documents were never filed with the trial

court and kept instead in the litigants' private possession. *See, e.g.*, *In re Alexander Grant & Co.

Litig.*, 820 F.2d 352, 354 (11th Cir. 1987) (per curiam) (addressing discovery documents

"maintained by the parties" pursuant to a protective order); *Shenandoah Publ'g House, Inc.*, 235

Va. at 261 & n.3 (adopting the reasoning of *In re Alexander Grant & Co. Litigation*).[21] But

when a party attaches "discovery materials to a motion filed with the court" seeking an

adjudication of the substantive rights of the parties, "the private nature of discovery comes into

---

[21] Rule 3A:12(b)(1) requires the subpoenaed document to be produced either in person "before the court or the clerk" or "deliver[ed]" to the clerk. Under Code § 17.1-292, "any record maintained by the clerk in a . . . criminal proceeding" is deemed part of the "[c]ourt records." We need not decide in this case whether the mere production of subpoenaed documents to the clerk in a criminal case qualifies the documents to be judicial records subject to the open-courts doctrine.

25

conflict with the public's right to access judicial records." *United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007) (addressing criminal discovery documents attached as exhibits to a suppression motion).[22] When this happens, the motion and its exhibits implicate the court's adjudicatory functions and thus fit squarely within the general definition of "judicial records" as documents "filed with the court" that could, should, or did "play a role in the adjudicative process, or adjudicate substantive rights." *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290. Broadly speaking, these documents include "any exhibits or motions filed by the parties," *Shenandoah Publ'g House, Inc.*, 235 Va. at 257, that are offered to affect "determinations made by the court or jury," LaFave, *supra*, § 23.1(d), at 280.

The Commonwealth filed the sealed documents in support of its motion to revoke bail and its motion addressing the applicability of Pearson's various defenses. Both motions implicated core adjudicatory functions of a criminal trial court. These sealed documents cannot be categorically dismissed as a sanctionable attempt by the Commonwealth to violate *Garrity*, *supra* at 22-23, to misuse Rule 3A:12(b), *supra* at 24, or to otherwise abuse the judicial process, as the City has claimed. The subpoenaed documents were placed before the trial court as exhibits to motions seeking to adjudicate substantive issues. Their former status as mere discovery documents has no relevance to the open-courts doctrine.

e.

Finally, the City insists that if these documents are made available to the public, it will be because the Commonwealth in effect "unilaterally unsealed" them by attaching them as exhibits

---

[22] *See also Commissioner, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1167-68 (11th Cir. 2019) (collecting cases); *Bond v. Utreras*, 585 F.3d 1061, 1073-74 (7th Cir. 2009).

to its motions "even though the Commonwealth was without the legal authority to unseal the documents on its own." City's Br. at 6; *see also id.* at 22; City's Reply Br. at 9; Oral Argument Audio (Record No. 210827) at 13:50 to 14:05. This argument overlooks the fact that no litigant can unseal, unilaterally or not, a sealed judicial record. Only a court can do that. If the City is suggesting that the Commonwealth was intentionally attempting to make public previously sealed documents, that too would be incorrect. The Commonwealth made its motions under seal and has consistently argued in the trial court and on appeal that the City's documents should remain sealed. It is unclear what the City is trying to say with its unilaterally-unsealed argument, but it appears to be a pure causality argument: But for the Commonwealth filing its sealed motions and exhibits, none of this information would have become a judicial record subject to the open-courts doctrine. That truism, however, proves nothing. A version of it can be said in every case involving sealed documents.

### 3. *Scope of Remand*

Having rejected the categorical reasons offered by the City for deeming the sealed documents outside the scope of the open-courts doctrine, the task remains of applying it to the hundreds of pages of previously sealed documents filed in the trial court. On remand, we direct the trial court to permit the Commonwealth, Pearson, the City, and the Newspaper Publishers an opportunity to present arguments on whether the sealed documents should be unsealed and to file briefs in support of their positions. *See, e.g.*, *Waller*, 467 U.S. at 50 ("We remand to the [lower] courts to decide what portions, if any, may be closed."). The arguments should take into account, among other things, the status of the criminal proceeding as well as any proffers of a "compelling governmental interest" that we have not directly rejected in this opinion and any measures "narrowly tailored to serve that interest." *See Press-Enterprise I*, 464 U.S. at 510

27

(citation omitted).  The court then should determine if all, some, or none of the disputed documents should be unsealed, and if any are unsealed, what redactions, if any, should be made.  Specific findings should accompany the court's order resolving this dispute.

III.

In sum, we hold that the trial court erred by closing Pearson's bail-revocation hearing.  We reverse the court's holding that the City had no standing to participate in the contest over the Newspaper Publishers' request that the sealed documents be unsealed.  We reject several of the City's arguments that the sealed documents are categorically outside the reach of the rebuttable presumption of access under the open-courts doctrine.  Finally, we direct that all remaining issues be resolved on remand consistent with this opinion.[23]

*Reversed and remanded.*

---

[23] Our online Virginia Courts Case Information system records that at the time of the issuance of this opinion, the jury has returned a verdict adverse to Pearson but that no final judgment has been entered by the trial court.  We direct the court to enter final judgment in the ordinary course and not to delay doing so because of the ongoing dispute over the sealed records.  As we recently held, *In Re: Bennett*, 301 Va. at 68-69, disputes such as this are best understood as ancillary proceedings that can persist beyond and even arise after the entry of final judgment in the underlying case.  The time deadlines for Pearson to exercise his right of appeal, therefore, will run from the date of the entry of final judgment in his case and not be affected by the continuation of this ancillary proceeding.